W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee,

v.

MELOS CONSTRUCTION CORP. and Americo Melo, individually and as an officer of Melos Construction Corp., Defendants-Appellants.

Nos. 308, 309, Dockets 32917, 32918.

United States Court of Appeals
Second Circuit.

Argued Jan. 14, 1969.

Decided March 19, 1969.

Leonard S. Kimmell, Kimmell & Kimmell, Mineola, N. Y., for appellants.

Carin A. Clauss, Atty., Dept. of Labor, John A. Hughes, Regional Atty. (Charles Donahue, Sol. of Labor, Bessie Margolin, Assoc. Sol., Robert E. Nagle, Atty., Dept. of Labor, on the brief), for appellee.

Before WATERMAN, KAUFMAN and HAYS, Circuit Judges.

HAYS, Circuit Judge:

Melos Construction Corp. and its president, Americo Melo, appeal from a judgment of the United States District Court for the Eastern District of New York, enjoining them from violating the over-

time and record-keeping provisions of the Fair Labor Standards Act. 29 U.S.C. §§ 207, 211 (1964, Supp. III 1965–67).

Melos is a construction company engaged in building foundations for homes on Long Island, New York. Its annual volume of business exceeds $500,000. Melos obtains its materials solely from dealers in New York. The principal item purchased by Melos is ready-mix concrete, which is a mixture of cement, sand, gravel, water and certain chemicals. The concrete is prepared by Melos' suppliers in New York but about 50 percent of the cement used—valued at approximately $35,000 a year—is produced outside New York. Melos also spends about $10,000 a year on lumber and other supplies obtained by New York dealers from out-of-state sources.

The only question raised on this appeal is whether Melos is an "enterprise engaged in commerce or in the production of goods for commerce," as defined in 29 U.S.C. § 203(s) (Supp. III 1965–67), so as to be subject to the relevant provisions of the Act.

Section 2(c) of the 1961 amendments [1] expanded coverage under the Act in two particulars. First, it brought within the Act's coverage all employees of an enterprise if some of its employees "engaged in commerce or in the production of goods for commerce." [2] Before 1961 the Act covered only those employees who were themselves so engaged. [3] Second, the Section defined "enterprise engaged in commerce or in the production of goods for commerce" to include an enterprise having employees engaged in "handling, selling, or otherwise working on goods that have been moved in or produced for commerce * * *." [4]

It is clear that before the 1961 amendment Melos was not subject to the Act, since it had no employees who were "engaged in commerce or in the production of goods for commerce" as that phrase was then defined. See Mitchell v. H. B. Zachry Co., 362 U.S. 310, 80 S.Ct. 739, 4 L.Ed.2d 753 (1960). And, of course, Melos' status with respect to coverage of the Act was not affected by that part of the amendment which enlarged the Act's coverage by including all employees of enterprises which had some employees engaged in commerce or the

1. Pub.L. No. 87–30, 75 Stat. 65 (1961).

  The relevant portion of Section 2(c) stated:

  " 'Enterprise engaged in commerce or in the production of goods for commerce' means any of the following in the activities of which employees are so engaged, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person: * * * (4) any such enterprise which is engaged in the business of construction * * *." Fair Labor Standards Amendments of 1961, Pub.L. No. 87–30, § 2(c), 75 Stat. 65, 66.

  In 1966 the Act was again amended to eliminate the dollar volume-of-business test for construction enterprises. Fair Labor Standards Amendments of 1966, Pub.L. No. 89–601, 80 Stat. 830. The 1966 amendment reworded without substantive change the portion of Section 2 (c) of the 1961 amendments quoted above. This portion of the statute now reads:

  " 'Enterprise engaged in commerce or in the production of goods for commerce' mean an enterprise which has employees engaged in commerce or in the production of goods for commerce, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person, and which * * * (3) is engaged in the business of construction * * *." 29 U.S.C. § 203(s) (Supp. III 1965–67).

2. The Section 2(c) definition of an "enterprise engaged in commerce or in the production of goods for commerce," see note 1, supra, was incorporated by Sections 4, 5(b), 6(a), 7 and 8 of the Fair Labor Standards Amendments of 1961, Pub.L. No. 87–30, §§ 4, 5(b), 6(a), 7, 8, 75 Stat. 65, 67, 69, 70, as amended, 29 U.S.C. §§ 205, 206(b), 207(a), 208(a), 212(c) (1964, Supp. III 1965–67).

  The Supreme Court upheld the constitutionality of this enterprise-based coverage in Maryland v. Wirtz, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968).

3. Fair Labor Standards Act of 1938, ch. 676, 52 Stat. 1060.

4. See note 1, supra.

production of goods for commerce.[5] However Melos' operation, like many other operations which were formerly not covered by the Act, was brought under it by the extension of coverage to include enterprises that have employees engaged in "handling, selling, or otherwise working on goods that have been moved in or produced for commerce."

That this extension of coverage was one of the purposes of the Act is supported by the Senate report on the bill enacting the 1961 amendments,[6] which states that the bill provides:

"the same concept of coverage—enterprises engaged in commerce or in the production of goods for commerce—for construction businesses as is provided in other categories of new coverage for other businesses," [7]

and then notes with respect to retail enterprises that

"the test relating to purchases and receipts of goods for resale, where such goods move or have moved across State lines, is not based on any interstate movement of such goods from the reselling establishment in its deliveries to customers. The interstate movement referred to is, rather, that movement by which such goods have been made available for sales of the reselling establishment * * *. The exclusion of essentially local retail businesses from the new coverage may be illustrated by the familiar types of enterprises which engage in selling handicraft items and similar goods which are locally produced from local materials and are sold in establishments in the towns and on the highways of the State where the goods are made." [8]

That the legislation was designed to regulate enterprises dealing in articles acquired intrastate after travel in interstate commerce is indicated by the fact that the Senate report also notes that "[t]he constitutional power of Congress under the commerce clause to exercise authority with respect to 'articles that have completed an interstate shipment and are being held for future sales in purely local or intrastate commerce' is also settled * * *." id. at 1622, and then cites United States v. Sullivan, 332 U.S. 689, 68 S.Ct. 331, 92 L.Ed. 297 (1948), which involved a druggist's actions with respect to medication purchased by him intrastate after it had traveled in interstate commerce.

Moreover, the minority report by Senators Goldwater and Dirksen also shows that Melos' activities bring it under the Act. It states:

"The bill is extraordinarily far-reaching in expanding the coverage features of the act. It would cover the following presently noncovered employees:

(a) Employees of employers in the construction business who are engaged in erecting, maintaining, or repairing dwellings, apartments, hotels, churches, schools and new factory buildings." [9]

Statements by various Senators in opposition to the statutory language here construed also demonstrate an understanding that the bill would greatly expand coverage under the Act. See, e. g., 107 Cong.Rec. 5976 (1961) (remarks of

---

5. Certain language in Maryland v. Wirtz, *supra*, 392 U.S. at 193, 88 S.Ct. 2017, 20 L.Ed.2d 1020, might be read as suggesting that Congress intended to extend coverage only in this limited way. A careful reading of the opinion shows, however, that this language is directed only at the portion of the amendment which brings about this particular extension of coverage. It is not directed to the impact of the words concerning employees working with goods that "have

been moved in * * * commerce * * *."

6. S.Rep. No. 145, 87th Cong., 1st Sess. (1961), *reprinted in* 2 [1961] U.S.Code Cong. & Admin.News 1620.

7. 2 [1961] U.S.Code Cong. & Admin.News 1620, 1651.

8. *Id.* at 1663–64. See generally *id.* at 1644.

9. S.Rep. No. 145, 87th Cong., 1st Sess., *reprinted in* 2 [1961] U.S.Code Cong. & Admin.News 1671, 1695.

Senators Lausche and Holland); *id.* at 6099, 6370–71 (remarks of Senator Ervin); *id.* at 6101–02 (remarks of Senator Allott).

The interstate character of the cement as a product that "has been moved" in interstate commerce is not destroyed by the fact that it is used to make a different product, ready-mix concrete, which is then purchased by Melos from New York suppliers who do not prepare it specifically for Melos. Nor does the mingling of the lumber and other supplies in the stock of the New York dealers from whom Melos purchases negate the origin in interstate commerce of these products. As the Labor Department regulations interpreting the Act provide:

> "It is immaterial * * * that the goods may have 'come to rest' within the meaning of the term 'in commerce' as interpreted in other respects, before they are handled, sold, or otherwise worked on by the employees in the enterprise. * * * Thus, employees will be considered to be 'handling, selling, or otherwise working on goods that have been moved in * * * commerce' where they are engaged in the described activities on 'goods' that have moved across State lines at any time in the course of business, such as from the manufacturer to the distributor * * *." 29 C.F.R. § 779.242 (1968).[10]

Thus the language and history of the 1961 amendments demonstrate that Melos is covered by the Act.

Affirmed.

WATERMAN, Circuit Judge (concurring):

I concur in affirming the order of the district judge. The lumber appellants used was in the identical form and condition in which it moved in interstate commerce. This, without more, was sufficient to require that appellant comply with the Act's provisions.

10. Cf. Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460 (1943) (discussing coverage under the Act prior to the 1961 amendments).