George P. SCHULTZ, Secretary of Labor, United States Department of Labor (Substituted as plaintiff for W. Willard Wirtz, Resigned), Appellant,

v.

W. R. HARTIN & SON, INC., a corporation, and W. R. Hartin, Jr., Individually, Appellees.

No. 13381.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 6, 1970.

Decided June 12, 1970.

Carin Ann Clauss, Atty., Dept. of Labor (Laurence H. Silberman, Solicitor of Labor, Bessie Margolin, and Harold C. Nystrom, Assoc. Solicitors, and Beverly R. Worrell, Regional Solicitor, on brief), for appellant.

Zach McGhee, Columbia, S. C., for appellees.

Before BOREMAN, WINTER and CRAVEN, Circuit Judges.

WINTER, Circuit Judge:

The Secretary of Labor appeals from a decision that W. R. Hartin & Son, Inc. (Hartin),[1] a mechanical contractor engaged in the installation and repair of central heating and air-conditioning systems, was exempt from the overtime requirements of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. The district judge concluded that Hartin was not "engaged in the business of construction or reconstruction, or both," as used in § 3(s) (3) which prescribes coverage.[2] He also held that Hartin was eligible for exemption from the overtime provisions of the Act as a "retail or service establishment" under § 13(a) (2).[3] We disagree on both points. We reverse and remand.

1. Joined as a defendant also was W. R. Hartin, Jr., the chief executive officer of the company. The relief sought against both defendants was an injunction against further violations of the Act by the failure to pay overtime computed at the rate as prescribed by the Act. It is unnecessary in this appeal to consider Mr. Hartin individually.

2. The maximum hours (overtime) provisions of § 7 are applicable to any employee engaged in commerce or in the production of goods for commerce or "employed in an enterprise engaged in commerce or in the production of goods for commerce." The phrase "enterprise engaged in commerce or in the production of goods for commerce" is defined by § 3(s) (3), as amended in 1966, to mean "an enterprise which has employees engaged in commerce or in the production of goods for commerce, including employees handling, selling, or otherwise working on goods that have moved in or produced for commerce by any person, and which * * * (3) is engaged in the business of construction or reconstruction, or both * * *." Prior to the 1966 amendments a dollar volume of annual gross of not less than $350,000 was part of the test for an enterprise in the business of construction or reconstruction. The test was removed in the 1966 amendments. On this record we cannot determine if Hartin exceeded this dollar volume prior to the effective date of the 1966 amendments.

3. Section 213(a) (2) provides that the maximum hours (overtime) provisions of § 7 are not applicable to "any employee employed by any retail or service establishment [with certain exceptions not pertinent here] * * * if more than 50 per centum of such establishments' annual dollar volume of sales of goods or services is made within the state in which the establishment is located, and * * * such establishment has an annual dollar volume of sales which is less than $250,000 * * *. A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of goods or services (or both) is not for resale and is recognized as retail sales or service in the particular industry * * *."
Hartin admitted at the time of argument that it was no longer entitled to this exemption because its dollar volume now exceeded $250,000 per annum, and claimed that it was presently paying overtime and in compliance with § 7. Our decision in this appeal will thus have limited application except for employees in prior years should the Secretary seek to recover unpaid overtime compensation for them as supplementary relief.

## I

The district judge found the following relevant facts, the correctness of which is not contested:

Hartin is a South Carolina corporation having its principal office in Columbia. It engages in the sale, installation and servicing of Lennox air-conditioning and heating systems under an exclusive franchise for the Columbia area from The Lennox Furmer Company. Its operations are all conducted in South Carolina within a forty-mile radius of Columbia. The furnaces and air-conditioning equipment which it sells and installs are shipped to it from the Lennox warehouse in Decatur, Georgia. For the twelve-month period February 13, 1967, through February 12, 1968—the crucial one for this litigation—Hartin had gross income of $359,676.62, of which $262,053.97 was derived from contract installations and $97,622.65 from service and repairs.

Hartin has no showroom or display area. It does not sell room air-conditioners, electric heaters or other small appliances; nor does it sell separately any of the items it uses in constructing central heating and cooling systems. Its only over-the-counter sales are occasional sales of filters. All other equipment is sold on an installed basis. Ordinarily it keeps few supplies on hand but orders them as needed for specific jobs.

Hartin has 25 employees, including sheet metal workers, installation mechanics, a shop foreman, a carpenter, repairmen, 2 office workers, and 3 "sales engineers." Typically, its sales are made through personal contact. Upon receipt of a customer inquiry, a sales engineer examines the premises and designs a heating and cooling system for the customer. He selects the basic heating or cooling unit and components, determines the kind of duct work which will be required and where to place the registers and cold air ducts. He then estimates the cost of materials and labor and, on the basis of these estimates, prepares a contract in which Hartin agrees to perform the work for a specified price. The contract includes an express guarantee that the equipment when installed will maintain specified temperatures. The contract does not itemize separately the charge for labor and materials and no adjustments are made on the basis of actual cost. The contracts range in amount from $400.00 to $7,600.00; the average is approximately $1,300.00.

Before a system is installed Hartin is required by an ordinance of the City of Columbia to secure a building permit, and compliance with the local building code is required. Under the Columbia licensing ordinance, Hartin is licensed as a mechanical contractor. Under a South Carolina law, it is licensed as a mechanical contractor under the classification of heating and air-conditioning.

Hartin's employees install the furnance or air-conditioner. These units are mounted on platforms or concrete slabs, and occasionally cork is employed to reduce vibration. If the building design hinders the installation of large units in the basement, Hartin's employees remove part of the wall to effect the placement. These employees also run the pipes and ducts from the furnace and air-conditioning units to outlets throughout the building. Holes are cut in floors and walls by Hartin's carpenter. The duct work is fabricated in Hartin's sheet metal shop according to the specifications presented by the sales engineer. If electrical and plumbing work is required, it is performed by subcontractors.

At trial the Secretary relied strongly on the classification of Hartin's type of business as "construction" by the *Standard Industrial Classification Manual*, Bureau of the Budget (1967) (SIC Manual).[4] The Secretary also presented

4. This document lists heating and air-conditioning contractors in its chapter on "Contract Construction," in "Major Group 17—Construction—Special Trade Contractors," under Industry 1711:

> Special Trade contractors primarily engaged in heating (except electric), plumbing, air conditioning, and similar work, or any combination of these types of work. Sheet metal work combined

an expert witness, Richard Hastings, a consulting engineer in Columbia, who, on the basis of the testimony he had heard at trial about Hartin's activities gave the opinion that Hartin was engaged in "mechanical construction."

Hartin offered the testimony of another expert witness, Marcus Durlach, another consulting engineer, who testified that a company which installs central heating and air-conditioning systems is not in the construction business but is "more like a television dealer" or other "retailer." Mr. Durlach saw no difference between a dealer selling room air-conditioners and a company engaged in the installation of central heating and cooling systems, but he conceded that the latter, when it performs the same work for a general contractor, is part of the construction industry.

Two other witnesses, one of Hartin's sales engineers and one of its competitors, testified that they viewed their work as retail when performed for the ultimate consumer. Mr. Sharpe stated that he never "felt" that he was part of the construction industry and he did not consider any installation of heating and air-conditioning to be construction regardless of its size and regardless of whether it was performed in conjunction with new construction. In his opinion "construction" referred only to the building of a house or other structure "from the bottom up."

## II

The legal question before us is whether Hartin is "engaged in the business of construction or reconstruction, or both" or whether it is a "retail or service establishment." If the former, Fair Labor Standard Act coverage existed; if the latter, the activities were exempt from the Act.

We start with the principles that the Act's "terms of coverage" must "be liberally * * * construed" Tobin v. Blue Channel Corp., 198 F.2d 245, 248 (4 Cir. 1952), approved in Mitchell v. Myrtle Grove Packing Co., 350 U.S. 891, 76 S.Ct. 148, 100 L.Ed. 784 (1955) (per curiam), and that "breadth of coverage" is "vital to [the Act's] mission" Powell v. United States Cartridge Co., 339 U.S. 497, 516, 70 S.Ct. 755, 94 L.Ed. 1017 (1950). It is equally well settled that exemptions from the Act are to be narrowly construed and limited to those "plainly and unmistakably within their terms and spirit." Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960); Mitchell v. Kentucky Finance Co., 359 U.S. 290, 295–296, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959); A. H. Phillips Inc. v. Walling, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095; Wirtz v. Ti Ti Peat Humus Company, 373 F.2d 209, 212 (4 Cir. 1969).

The presumption of coverage gives rise to the conclusion that "the business of construction or reconstruction, or both" includes, in ordinary, natural, plain and common usage, the extensive fabrication and installation of ducts and pipes and incidental alterations to buildings. Hartin's business is unlike the sale of window air-conditioners even when that sale includes the secondary service of installation by mounting window fittings. The latter is the business of a "retail establishment."

Our conclusion is reinforced by other considerations. The SIC Manual classifies Hartin as a special trade contractor—one engaged in the "business of construction."[5]

---

with any of the above types of work is included here, but roofing and sheet metal contractors are classified in Industry 1761. Electric heating contractors are classified in Industry 1731. The *SIC Manual* expressly recognizes that such special trade contractors "may work on subcontract from the general con-

tractor, performing only part of the work covered by the general contract, or they may work directly for the "owner;'" it also states that such contractors "may have shops where they perform work incidental to the site job."

5. The classification of heating and air-conditioning contractors as special trade con-

190

Not only is this classification to be deemed support for our conclusion. *Cf.* Roland Electric Co. v. Walling, 326 U.S. 657, 674–675, 66 S.Ct. 413, 90 L.Ed. 383 (1946); A. H. Phillips, Inc. v. Walling, 324 U.S. 490, 496, 65 S.Ct. 807, 89 L.Ed. 1095 (1945), there is evidence that Congress relied on SIC Manual classifications when it last amended § 3(s) (3) —the section which extends coverage to persons "engaged in the business of construction or reconstruction, or both." Thus, Senate Report 1487, 89th Cong., 2d Session, 1966, p. 5, states that the section, as amended, would cover 2.9 million employees. According to the statistics published in U. S. Department of Labor, *Employment and Wages, Fourth Quarter 1964*, p. 17, there were 905,000 employees in "building construction," 610,000 employees in "construction other than building construction," and 1,381,000 employees in "construction— special trade contractors"—including 325,195 employees of "plumbing, heating and air conditioning" contractors. Also, we and other courts have not hesitated to treat the various types of special trade contractors as covered by § 3(s) (3) of the Act. *E. g.*, Clifton D. Mayhew, Inc. v. Wirtz, 413 F.2d 658 (4 Cir. 1969) (painting contractors); Schultz v. Mack Farland & Sons Roofing Company, 413 F.2d 1296 (5 Cir. 1969) (a roofing company); Wirtz v. Melos Construc-

tion Corp., 408 F.2d 626 (2 Cir. 1969) (contractor engaged in building residential foundations); Wirtz v. Tessier Sheet Metal Works, Inc., 18 W. H. Cases 5 (D.S.D.1967) (a heating and air conditioning contractor).

III

In deciding that Hartin's business activity was "retail," the district judge placed heavy reliance on an opinion letter of the Wage-Hour Administrator dated December 7, 1965. Wage and Hour Manual 91:1020(1). The letter sets forth the criteria by which installation of furnaces and air conditioning equipment will be considered a nonretail construction activity. By elaborate findings to show that these criteria were not met, the district judge reached his conclusion.

We think the reliance of the district judge on the opinion letter was misplaced. It prescribed tests for determining whether the installation was a nonretail construction activity only "[w]here a firm in addition to selling goods also installs them." In that event, the opinion letter continued, "a determination must be made to determine whether the installation is incidental to a retail sale or is essentially a nonretail construction activity." Hartin does not engage in such business; it sells no equipment independent of installation.

tractors engaged in construction is set forth in fn. 4. Their precise position in relation to the construction industry generally is also explained:
As defined in the SIC Manual, "[t]he term 'construction' includes new work, additions, alterations, and repairs" and covers "[t]hree broad types of contract construction activity * * *: namely, (1) building construction by general contractors, (2) other construction by general contractors, and (3) construction by special trade contractors" (*SIC Manual*, p. 27). The Manual also carefully distinguishes between contractors like Hartin, and establishments engaged primarily in the manufacture and sale of building materials:
The installation of prefabricated building equipment and materials by general contractors and special trade con-

tractors is classified in this [construction] division. Similar installation work performed as a service incidental to sale by employees of an establishment manufacturing or selling prefabricated equipment and materials is classified according to the principal activity of the establishment in the Manufacturing or Trade Divisions [*SIC Manual*, pp. 27–28].
* * * * *
Establishment primarily engaged in the retail sale of plumbing, heating, and air conditioning equipment and supplies. *Establishments primarily engaged in plumbing installations*, which may sell incidental amounts of supplies and equipment, *are not considered part of Retail Trade, and are classified in Industry 1711* [as construction]. [*SIC Manual*, p. 238; emphasis added.]

What it sells is a working, installed system designed and fabricated for the individual customer and guaranteed to maintain a specific temperature. The contract under which the sale is made does not separately state the cost of. the components of the system, nor the labor, materials and installation charges. Manifestly, this is not the type of retail-sale-plus-installation business which the opinion letter treats.

More closely applicable to Hartin's business is an opinion letter dated October 24, 1962, Wage and Hour Manual 91:1538a:

> * * * construction or reconstruction activities, whether performed by a construction contractor or a lumber and building materials dealer or anyone else, are by nature not retail sales or services. As an example, such activities as the erection of a garage, the addition of a dormer to a dwelling, *the installation of a central heating system*, the finishing of a basement or cellar into a recreation room, or the erection of or closing in of a porch are *construction activities that are not recognized as retail * * *.* On the other hand the sale and installation of a window type air conditioning unit may be recognized as a retail sale and service. The same would be true of the sale and installation of storm windows and doors where the installation work performed is limited to the incidental hanging of the purchased items.

 While opinion letters are not binding on the courts, they do constitute "a body of experienced and informed judgment" which have been "given considerable and in some cases decisive weight." Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944); Roland Electric Co. v. Walling, *supra*, 326 U.S. at 676, 66 S.Ct. 413, 90 L.Ed. 383; Idaho Sheet Metal Works v. Wirtz, 383 U.S. 190, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966). We think that the October 24, 1962, opinion letter correctly interprets the Congressional distinction between "construction" and "retail." Properly, it places focus on the primary activity of the business. Here, the primary activity is installation of air-conditioning systems. Hartin's installations cannot be characterized as incidental to retail sales. They are construction activities, and we so hold.

## IV

 In oral argument Hartin has also raised the defense of good faith reliance on the opinion letter of December 7, 1965, citing § 10 of the Portal-to-Portal Act, 29 U.S.C.A. § 260. The short answer to this contention is that the record discloses no reliance on the letter, *cf.* Clifton D. Mayhew v. Wirtz, *supra*.

The judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.