George P. SCHULTZ, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

KIP'S BIG BOY, INC., Defendant-Appellee.

No. 28694.

United States Court of Appeals, Fifth Circuit.

July 17, 1970.

As Corrected Aug. 5, 1970.

L. H. Silberman, Sol., U. S. Dept. of Labor, Washington, D. C., M. J. Parmenter, Regional Sol., U. S. Dept. of Labor, Richard L. Collier, Trial Atty., Dallas, Tex., Bessie Margolin, Carin Ann Clauss, Attys., U. S. Dept. of Labor,

**532**

Washington, D. C., Leon M. Kestenbaum, Atty., United States Dept. of Labor, Washington, D. C., for plaintiff-appellant.

Philip Wilson, Dallas, Tex., for defendant-appellee.

Before TUTTLE, THORNBERRY and INGRAHAM, Circuit Judges.

TUTTLE, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Northern District of Texas, holding that the commissary of Appellee Kip's Big Boy, Inc. was not covered by the Fair Labor Standards Act because of the lack of the Secretary's proof that Kip met the required test of establishing an "inflow" in interstate commerce. The trial court also found that the Commissary was inseparable from retail outlets and was thus entitled to the "retail establishment" exemption under Section 13(a) (2) of the Fair Labor Standards Act, 29 U.S.C.A. § 213(a) (2). The court also held that the work performed by employees handling incoming (interstate) shipments was "inconsequential and occasional" as a further basis for denying relief.

The Secretary of Labor brought the action against Kip for violating both the minimum wage and overtime provisions of the Fair Labor Standards Act, Sections 6(b) (1), 7(a) (2) and 15(a) (2), 29 U.S.C.A. § 206 et seq. While there are some disagreements as to the exact facts, the trial court did not adequately deal with the factual dispute issue because it concluded that "the first consideration in this case is the definition of 'Enterprise,' that Kip was not an 'Enterprise'" and was, therefore, not covered by the Act. Prior to the 1967 amendment 29 U.S.C.A. § 203(s) (1) an enterprise as defined by the Act and relevant here had to have (1) one or more retail or service establishments with an annual gross volume of sales not less than $1,000,000 and received or purchased goods for resale that move or have moved across state lines which amount in total amount to $250,000 or more.[1] The case was submitted to the district court stipulating that Kip owned nine restaurants, a warehouse and a commissary and that Kip's gross annual dollar volume of sales was in excess of $1,000,001 in each of the three calendar years in question—July 19, 1964 through July 19, 1966.[2] The parties did not stipulate as to the $250,000 interstate commerce flow requirements but submitted stipulated records denominated "invoices" representing total direct purchases by Kip's warehouse or commissary in Dallas, Texas, from places located outside of the State of Texas 7–18–64 through 8–17–66. These documents *themselves* did not establish the $250,000 requirement for any of the three time periods. The three time periods used by the Secretary were July 18, 1964 through February 28, 1965; March 1, 1965 through February 27, 1966 and February 28, 1966 through August 17, 1966. These dates, or rather the February date, was used because it was the "end-date" of the company's fiscal year. For the 64–65 period, the stipulated records themselves, proved a $96,622.36 "inflow;" the 1965–66 period records proved a $174,052.95 "inflow" and the 1966–67 period records proved $106,953.-64 of direct purchase from outside the state.

Appellee argues that this should be the extent of permissible proof—the documentary evidence. This limitation is without merit. The statute does not limit the computation of the $250,-000 goods to those purchased directly by the employer from a place or places located outside the State of Texas, but takes into consideration also goods which were purchased *indirectly* from places outside the State of Texas. In

---

1. The $250,000 inflow requirements was eliminated by the 1966 amendment.

2. Only Kip's employees in its central office, warehouse and commissary are alleged to be covered by the Act, not the restaurant employees.

Wirtz v. Melos Construction Corp., (2nd Cir., 1969) 408 F.2d 626, where a purely New York construction corporation purchased its material solely from dealers in New York, which the dealers had purchased from out of state dealers, in another form, i.e., raw stage, the court, in construing similar interstate commerce language, held that "the legislation was designed to regulate enterprises dealing in articles *acquired intrastate* after travel in interstate commerce is indicated by the fact that the Senate report also notes that '[t]he constitutional power of Congress under the commerce clause to exercise authority with respect to articles that have completed an interstate shipment and are being held for future sales in purely local or intrastate commerce is also settled. * * * ' "

Therefore, it appears clear that the only test is that "goods amounting to $250,000 a year must be purchased or received for resale and have moved across state lines *at some stage in the flow of commerce to the retailer.*" 2 U.S.Code Cong. and Admin.News 87th Cong., 1st Sess., 1961, p. 1645. The issue, therefore, becomes whether the Secretary's proof on indirect purchases when added to the proven direct sales met the $250,000 "inflow" test.

Based on all the available information which the Secretary had, he developed a formula which involved the theoretical application of percentiles to the gross sales of the appellee Kip's Big Boy. In short, the appellants' expert reconstructed interstate purchases by establishing that during the period from July 18, 1964 to February 28, 1965 direct and indirect inflow represented 7.35 percent of the defendant's gross sales of approximately $4,000,000. However, the trial court held that these figures did not represent the gross sales for these years. The court found that the gross sales for July 1964 to February 1965 were $3,-225,590.63 and that the gross sales for 1965 was $3,702,269.71 and that "assuming the validity of the percentile method of determining inflow * * *" the annual interstate purchases for these years would be less than the $250,000 requirement. The difficulty with the court's reasoning is that with a known figure of "inflow" of $317,512 and gross sales of a smaller amount, the percentage would be larger, rather than smaller. Thus, when the percentage was applied to gross sales for subsequent periods to test the proportion of total sales represented by "inflow" it is clear that Secretary's expert witness properly used a percentage figure of 9.14. The trial court's opinion reflects the mistake of the court, for the court adjusted the gross sales figure without reflecting an adjustment in the percentage figure as was done at trial by the Secretary's expert witness. The court does not explain in its opinion why it used 7.35% as opposed to 9.14%. Clearly if the 9.14 figure is accepted and used, the Secretary met his $250,000 inflow test for 1964 and 1965. Moreover, even mathematically the court erred in finding that 7.35% of $3,702,369.79 for 1965 did not exceed $250,000. It is $272,124.17.

For the calendar year 1966, a purchase analysis showed direct interstate purchases in the amount of $106,953.64. This figure represents purchase for only February 28, 1966, through August 17, 1966. The court held that "it cannot be presumed that interstate purchases continued at the same rate subsequent to August 17, 1966." However, Kip's testified that the interstate purchases were generally consistent from year to year. It appears clear from the court's opinion that it really rejected the Secretary's method of proof for in speaking of the 1966 year proof, the court held: "It cannot be presumed that interstate purchases continued at the same rate subsequent to August 17, 1966, and that the *total amount* of annual 'inflow' purchases should have been the subject of documentary evidence and such proof has not been made by the plaintiff for the balance of 1966." We conclude that, on the record, adequate proof was made for the year 1966, both based on the assumed direct rate of interstate purchases for the remaining months of the year 1966 and

on the percentage of sales method of computation.

It appears clear that the Secretary's method of proof should be accepted, for obviously some method other than documentary evidence has to be accepted for indirect purchases. If the Secretary's method is in fact consistent with approved accounting methods, and this was testified to without contradiction, there is no reason why the court should not recognize it. It also appears that the Secretary did carry out his duty as outlined by this court in Foremost Dairies v. Ivey, (5th Cir., 1953) 204 F.2d 186, that the Secretary based upon the record produced below and the *reasonable* inferences applicable thereto [i.e., percentile formulas] must establish a prima facie case.

■ The trial court in its Supplemental Memorandum Opinion also erred in holding that the activities of Kip's male commissary employees were "too inconsequential and Occasional"[3] to bring them within the Act's coverage of employees working in interstate commerce. It is undisputed that the male employees at the commissary worked exclusively in the preparation of food and related activities at least 98% of their time. The court found that four of the male employees placed goods on Kip's shelves after they had moved in interstate commerce and had been placed on their dock by non-Kip employees. Spices were delivered once a week and took one man less than five minutes to place on the storeroom shelves; paper products were delivered once a month and took two men a half hour to load upon the storeroom shelves; comic books took the time of two men twenty minutes a week; shrimp was delivered once a month and took three men forty-five minutes to store and cracker meal was delivered once a month and required one hour for two men to store. Relish was placed on shelves at the rate of two men for forty-five minutes once a month. In short,

Kip's male employees regularly worked an average of not less than ten hours per month in interstate commerce. Moreover, Kip's employees reloaded much of the goods to send out to its retail outlets.

In Mitchell v. C & P Shoe Corp., (5th Cir., 1960) 286 F.2d 109, this court held that where shoes were delivered to the store's shoe company warehouse and loaded on the dock by the driver of the truck and the employees of the company stored them, took inventory and delivered them to local shoe stores, that the employees were engaged in interstate commerce. See Walling v. Jacksonville Paper Co., 317 U.S. 564, 567, 63 S.Ct. 72, 87 L.Ed. 499 (1942).

Although the courts, in dealing with the "engaged in interstate commerce" language of the Fair Labor Standards Act have held that the language is not co-extensive with the limits of power of Congress over commerce, Walling v. American Stores Co. (7th Cir., 1943), 133 F.2d 840, nevertheless, the phrase "engaged in commerce" in the chapter, where applicable to employees engaged in commerce, "covers every employee *'in the channels of interstate commerce'* as distinguished from those who merely affect that commerce." McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538 [emphasis added].

Here, appellee concedes that approximately one percent of the total work week of the four male employees was spent in storing "goods which had moved in commerce." In spite of the trial court's statement that this activity was "occasional," it is undisputed that it was regular and repetitive each week and each month.

■ We conclude that the term "substantial" here is to be given its connotative meaning; that is to say, substantial is not to be determined by looking at the number of hours work but the regularity of the work. "The line must be between activities purely local in nature, done on

---

3. The court's use of the term "occasional" is misleading for the duties performed were not occasional but regular.

an infrequent, isolated, sporadic basis by the employees. * * * " Wirtz v. Ferguson (5th Cir., 1963) 317 F.2d 343, 346. That is to say that the regularity of the employee doing assigned interstate work which is necessary to the normal operation of the purely intrastate business should determine if the employee is substantially engaged in interstate commerce, not the exact number of hours spent, for if Kip's Big Boy were not able to receive and store its shrimp, etc. when they were regularly received, it would *substantially* damage the business. Moreover, this court has held in Ivey v. Foremost Dairies, Inc., (5th Cir., 1953) that the provisions of the Act apply to employees who spend one percent of their time in commerce.[4]

This approach is necessary, because an employer whose business is purely local could avoid the "employee engaged in commerce" provision of the Act by assigning receipt of goods which have moved in interstate commerce to a hundred different employees where the work would normally take two full time employees regularly receiving goods by contending that each of the one hundred employees only spends one-half hour per week receiving goods and therefore their handling goods which had moved in interstate commerce was "inconsequential and occasional."

■ Appellant also argues that the court erred in holding that Kip's central commissary is a retail establishment whose employees are exempt under Section 13(a) (2) of the Act. Kip argues first that "the employees who regularly worked in the commissary were not engaged by a separate corporate entity but rather were members of a family of

nearly 1,000 employees * * *." That means nothing, as continuity in ownership is not controlling. We must look to the jobs being performed. Mitchell v. Sunshine Department Stores, Inc., 292 F.2d 645.

■ Also, the fact that the work prepared by the employees is termed "unfinished" food items is not controlling. To say that hamburger patties are unfinished just because they were not cooked is applying a unique definition of "unfinished." What appellant should have stated was that the food items were "unprepared" for particular customers' consumption. Under any interpretation, "shied cheese," "prepared beef chili" and "made salad dressings" are finished food items.

■ Appellee admits in its brief that "It is recognized by the appellee that the great bulk of all the case law dealing with exemptions and the applicability of the exemption to central offices, central warehouses or central processing facilities deny the application of the exemption * * * " This is the holding of this court in Mitchell v. Sunshine Department Stores, *supra*. Appellee has not made a valid distinction between Kip's and the employers in the cases decided by this and other courts. See Phillips, Inc. v. Walling, 324 U.S. 490, 494–496, 65 S.Ct. 807, 89 L.Ed. 1095. The trial court erred in holding that the retail store exemption applied to this commissary and warehouse.

Therefore, the judgment of the trial court should be reversed.

The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

---

4. While neither the district court's findings nor the Court of Appeals opinion state the precise percent of time spent by each employee, the employee's answer to the complaint made the one percent assertion. See, 106 F.Supp. 793 (W.D. La.1952).