479 F.2d 1027
 21 Wage & Hour Cas. (BN 57, 71 Lab.Cas. P 32,907
 Peter J. BRENNAN, Secretary of Labor, United States
Department of Labor, Plaintiff-Appellee-Cross Appellant,
v.
GREENE'S PROPANE GAS SERVICE, INC., a corp. et al.,
Defendants-Appellants-Cross Appellees.
 No. 71-2339.
 United States Court of Appeals,
Fifth Circuit.
 May 16, 1973.
 
 George W. Hart, Atlanta, Ga., for defendants-appellants.
 Roger J. Martinson, U.S. Dept. of Labor, Beverley R. Worrell, Regional Sol., Atlanta, Ga., Peter G. Nash, Bessie Margolin, Carin Ann Clauss, LeRoy M. Jahn, Attys., U.S. Dept. of Labor, Washington, D. C., for plaintiff-appellee.
 Before JOHN R. BROWN, Chief Judge, and BELL and SIMPSON, Circuit Judges.
 JOHN R. BROWN, Chief Judge:
 
 
 1
 The Secretary of Labor sought an injunction under Sec. 17 of the Fair Labor Standards Act (29 U.S.C.A. Sec. 201 et seq.) to interdict continuing violation of the Act's minimum wage, overtime, and record keeping requirements[1] by these multicorporate employers. The District Court found (i) that the Employers, taken together, constituted an "enterprise" within the meaning of Sec. 3(r)[2] of the Act, and (ii) that the enterprise was and is "engaged in commerce or in the production of goods for commerce" within the meaning of Sec. 3(s)(1)[3] of the Act, and (iii) that three of the four named employers failed to qualify for the exemption to coverage under FLSA contained in Sec. 13(a)(2).[4] With these findings, and (iv) the finding that the goods sold-propane gas-had not lost its identity as goods which have moved in interstate commerce, the District Court ordered the payment of $19,442 in back wages to named employees of the three non-exempt employers and enjoined future violations of the Act.
 
 
 2
 Accepting (i) above but challenging (ii), (iii) and (iv), all of which are essential to the District Court's decision, the Employers ask us to reverse. Finding the decision of the District Court to be without error we affirm.[5]
 
 
 3
 The Employers-Greene's Propane Gas Service, Inc., [the Thomaston store], Greene's Propane Gas Service, Inc., of Perry,[6] Greene's Propane Gas Service, Inc. of Macon, and Greene's Propane Gas Service, Inc. of Albany-are retailers of propane gas and related gas appliances in the state of Georgia. Harvey R. Greene is the majority shareholder in each of these four corporate employers, the defendants here. But the Greene complex does not stop with these employers. The four employer stores buy their propane gas from Greene's Transport Company, Inc. They lease the tank trucks with which they make deliveries from Greene's Equipment Company (a corporation) and store the gas delivered by Greene's Transport in tanks leased from Greene's storage companies (four other corporations). Gas originating in Texas, Louisiana, and Mississippi is shipped to Georgia by pipeline and is purchased by Greene's Transport Company at Pipeline Terminal Facilities in Milner and Albany, Georgia. Greene's Transport receives the gas at the terminal facilities.
 
 
 4
 It is understandable that Employers do not challenge the holding below that they-together with the rest of the occupants of the veritable corporate cornucopia of legal entities which Mr. Greene controls[7]-constitute an "enterprise". The main thrust of employers' non-coverage argument has nearly as little vitality.
 
 
 5
 Employers contend that "enterprise" coverage, added to the FLSA in 1961 by amendment, depends on individual employees being "engaged in commerce or in the production of goods for commerce". They assert that all the 1961 amendments-namely Sec. 203(s) and its subdivisions-did was to extend coverage to all the employees of an enterprise some of whose employees were "engaged in interstate commerce". Employers cite much of the legislative history in support of this proposition.[8]
 
 
 6
 What Requisite Interstate Involvement?
 
 
 7
 Even if we faced this argument on a question of first impression we could not ignore the apparently plain language of Sec. 203(s) which states that "enterprise engaged in commerce or in the production of goods for commerce" includes "employees' handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person". (Emphasis added). The tense is in the past. There is no requirement of continuity in the present. If the legislative history were compelling-and it is not[9]-we might still be forced to hold that what Congress has enacted, even though something different from what it thought it enacted, would still be applicable since the language of the statute is so plain.[10] But we face no such prospects, for our opinion in Schultz v. Kip's Big Boy, Inc., 5 Cir., 1970, 431 F.2d 530, 533 is dispositive. There the Court held that "the legislation was designed to regulate enterprises dealing in articles acquired intrastate after travel in interstate commerce"[11] (emphasis in original) and the Court said that given (as is true in this case) the stipulation of enterprise sales in excess of $1,000,000 "the only test is that 'goods amounting to $250,000 a year' must be purchased or received for resale and have moved across state lines at sometime in the flow of commerce to the retailer, 2 U.S. Code Cong. and Admin.News, 87th Cong., 1st Sess., 1961, p. 1645".[12] (Emphasis in original). We think that further discussion on this point is unwarranted.
 
 
 8
 Which Gas?
 
 
 9
 Having lost in its frontal assault against the holding that the employees were covered by FLSA Employers attempt a flanking maneuver by asserting that the goods in which they deal are not the goods which have traveled in interstate commerce. That is, they argue that the propane gas loses its out-of-state identity because it is dehydrated and filtered free of accumulated debris at the time it leaves the pipeline to go into storage tanks at the pipeline terminal. The transformation-if removing the dirt and water that entered the pipeline during transit were not enough-is completed when a chemical odorizer called petrocapitane is-as required by law in the state of Georgia-inserted into the propane at the rate of one and one-half pounds for every ten thousand gallons of liquid propane. This odorizer allows the consumer to detect a leak in his propane system which would otherwise go unnoticed because propane is odorless.
 
 
 10
 The result is that the gas is in better condition and it can now be safely used by consumers at the burner tip, but it is still the gas that originated in the depths of Texas or Louisiana. Extraction of impurities, removal of water and odorization do not change the commodity, certainly not in a practical sense. The analogy with our holding in Placid Oil Co. v. F.P.C., 5 Cir., 1973, 483 F.2d 880 (1973) causes us to think that this "new" gas, molecularly indistinguishable from the "old" gas, must bear the financial burden of FLSA like an added atom in its carbon ring.
 
 
 11
 Further, even where out-of-state goods have been altered in form the courts have not hesitated to hold that the goods still retained their interstate identity for purposes of Section 3(c).[13] In Schultz v. Kip's Big Boy, supra, this court citing Melos, supra, with approval specifically referred to its holding that it was immaterial that the out-of-state goods upon which coverage was based had been shipped in commerce "in another form, i. e., raw stage".[14] The Court in Melos predicated coverage on the local purchase of ready-mix concrete which was prepared by the supplier from cement acquired out of the state. The Second Circuit stated that "[t]he interstate character of the cement as a product that 'has been moved' in interstate commerce is not destroyed by the fact that it is used to make a different product, ready-mix concrete, which is then purchased by Melos."[15]
 
 
 12
 The argument is a nice try, but it doesn't work either molecularly or juridically. The gas is the gas.
 
 
 13
 Who An Establishment?
 
 
 14
 Having failed to exclude themselves from inclusion Employers, by a reverse twist, attempt to include themselves in an exclusion-Sec. 13(a)(2).[16] This Section exempts from coverage those "establishments" which though they are included in a covered enterprise, have an annual dollar volume of sales less than $250,000. That is, an establishment which is part of an enterprise will be exempt from coverage if that establishment does less than the quarter million dollars sales outflow figure, even though the remainder of the enterprise is covered under FLSA. Employers stipulated that the annual dollar volume of sales for each of the Thomaston, Albany, and Macon Corporations was in excess of $250,000. Nonetheless they claim the exemption on the basis that each of the separate route trucks operating from these stores is a separate establishment[17] and that therefore the deliveries made by the route trucks operating out of each respective store cannot be counted in the three stores. On such a conclusion none of the three would have sales exceeding the statutory minimum requirement.
 
 
 15
 The position that the routemen are separate business establishments is untenable in the light of the facts produced at the trial.[18] It cannot be factually disputed that these trucks though they may be separate physical units, constitute pieces of single businesses of which they are a functional part. These trucks are simply selling agents of the store to which the route salesmen are attached. The majority of customers were billed regularly from the sales offices, which took care of ordering all supplies and equipment. In short the routemen were simply delivery agents for the store's sales and service office which together with its delivery routes constituted the establishment. As we have said before in Wirtz v. Keystone Readers Service, Inc., 5 Cir., 1969, 418 F.2d 249, 255 and now reiterate salesmen do not themselves qualify, either individually or collectively, as an "establishment" within the meaning of the exemption.
 
 
 16
 The Trial Court's decision comported with the canonical rule that exemptions from FLSA are to be given a niggardly construction against the employer. Mitchell v. Kentucky Finance Co., 1959, 359 U.S. 290, 295, 79 S.Ct. 756, 759, 3 L.Ed.2d 815, 819; Brennan v. Great American Discount and Credit Co., Inc., 5 Cir., 1973, 477 F.2d 292; Schultz v. Instant Handling, Inc., 5 Cir., 1969, 418 F.2d 1019. While it is true we are a peripatetic undulating people, constantly on the go, driven on the wheels or wings of energy consuming power units, we are not ready to endorse a contrary holding which might make every delivery driver, milkman, and other outside salesmen an exempt establishment on wheels under Sec. 13(a)(2).
 
 
 17
 Affirmed.
 
 
 
 [1]
 The provisions are respectively, Sec. 6(b) (1), (minimum wage); Sec. 7(a)(2), (maximum hours-overtime); and Sec. 11(c), (record keeping). Sec. 201, etc., of 29 U.S. C.A. corresponds to Sec. 1, etc., of the Act. Thus, Sec. 6(b)(1) of the Act is 29 U.S. C.A. Sec. 206(b)(1)
 
 
 [2]
 Section 3(r) defines "enterprise" as:
 (r) "Enterprise" means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements * * *."
 29 U.S.C.A. Sec. 203(r).
 
 
 [3]
 The scope of enterprise coverage as defined by Sec. 3(s) and Sec. 3(s)(1) is:
 (s) "Enterprise engaged in commerce or in the production of goods for commerce" means any of the following in the activities of which employees are so engaged, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person:
 (1) any such enterprise which has one or more retail or service establishments if the annual gross volume of sales of such enterprise is not less than $1,000,000, exclusive of excise taxes at the retail level which are separately stated and if such enterprise purchases or receives goods for resale that move or have moved across State lines (not in deliveries from the reselling establishment) which amount in total annual volume to $250,000 or more; * * *"
 29 U.S.C.A. Sec. 203(s)(1). See Judge Moore's opinion for this Court in Brennan v. Wilson Building, Inc., 5 Cir., 1973, 478 F.2d 1090 (1973).
 The Fair Labor Standards Amendments of 1966 (80 Stat. 830, 831) further extended the Act's "enterprise coverage" by reducing the dollar volume requirement and deleting the $250,000 "inflow" test of Sec. 3(s)(1). These amendments do not affect the coverage issue involved here, since the Secretary is claiming the higher wage and stricter overtime standards prescribed in Secs. 6 and 7 for employees brought under the Act by the 1961 Amendments, and has proved his case under those standards.
 
 
 [4]
 Subsection (a)(1) of Sec. 13 is set out here also:
 "Sec. 13(a) The provisions of sections 6 and 7 shall not apply with respect to-
 (1) any employee employed in a bona fide executive, administrative, or professional capacity * * *, or in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary * * *); or
 (2) any employee employed by any retail or service establishment * * *, if more than 50 per centum of such establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located, and such establishment is not in an enterprise described in section 3(s) or such establishment has an annual dollar volume of sales which is less than $250,000 (exclusive of excise taxes at the retail level which are separately stated) * * *."
 29 U.S.C.A. Sec. 213(a). The Employers claim the exception under Sec. 13(a)(1) only for their routemen but claimed the exemption under Sec. 13(a)(2) for all their employees. Greene's Propane Gas Service, Inc. of Perry came within the exception under Sec. 13(a)(2).
 
 
 [5]
 The Secretary filed a cross appeal alleging that the District Court erred in finding that Appellant's routemen were "outside salesmen". The Secretary has abandoned that appeal. For this case it means that he now acquiesces in the District Court's ruling on that question
 
 
 [6]
 See note 4, supra
 
 
 [7]
 Whatever the legislative history may show, the history of this legislation makes it apparent that Congress, after enactment, thought that it had legislated broadly enough to cover facts like these. In the Senate Report on the 1966 Amendments, Senate Report No. 1487, 89th Congress (1966) as reported in U.S.Code Cong. and Admin.News 1966, p. 3009, it was pointed out that "also, the operations through substantial ownership or control of a number of firms engaged in similar types of business activities constitute, in the committee's view, related activities performed through unified operation or common control within the meaning of the definition of enterprise. The fact that the firms are independently incorporated or physically separate or under the immediate direction of local management, as in Wirtz v. Hardin, 16 Wage Hour Cases 722 (N.D.Ala.) [253 F.Supp. 579 (N.D.Ala.1964)] is not determinative of this question." And see Shultz v. Mack Farland & Sons Roofing Co., 5 Cir., 1969, 413 F.2d 1296
 
 
 [8]
 See 2 U.S.Code Cong. and Admin.News, p. 1620 (1961) et seq
 
 
 [9]
 See materials cited footnote 8, supra
 
 
 [10]
 It is a basic principle of statutory construction that words in a statute must be given their "literal" or "ordinary" meaning where such "appears to be consonant with the purposes of the Act." Commissioner v. Brown, 1965, 380 U.S. 563, 571, 85 S.Ct. 1162, 1166, 14 L.Ed.2d 75, 82, Malat v. Riddell, 1968, 383 U.S. 569, 571, 86 S.Ct. 1030, 1032, 16 L.Ed.2d 102, 104; United States v. Merchants National Bank of Mobile, 5 Cir., 1958, 261 F.2d 570, 575; Buttecali v. United States, 5 Cir., 1942, 130 F.2d 172, 174
 
 
 [11]
 The quotation is from Wirtz v. Melos Construction Corp., 2 Cir., 1969, 408 F. 2d 626, 629, which was followed by the Kip's court. Also, the Second Circuit quoted with approval from the Labor Department's Interpretative Bulletin on enterprise coverage as follows:
 "It is immaterial * * * that the goods may have 'come to rest' within the meaning of the term 'in commerce' as interpreted in other respects, before they are handled, sold, or otherwise worked on by the employees in the enterprise. * * * Thus, employees will be considered to be 'handling, selling, or otherwise working on goods that have been moved in * * * commerce' where they are engaged in the described activities on 'goods' that have moved across State lines at any time in the course of business, such as from the manufacturer to the distributor * * *." 29 C.F.R. Sec. 779.242 (1968) [408 F.2d at 629].
 This Court has recently stated that "Although courts are not bound by interpretative bulletins, they provide us with guidance simply because they reflect the position of those most experienced with the application of the Act," Brennan v. Great American Discount and Credit Co., Inc., 5 Cir., 1973, 477 F.2d 292.
 
 
 [12]
 Schultz v. Kip's Big Boy, Inc., 5 Cir., 1970, 431 F.2d at 533
 
 
 [13]
 The Administrator in his interpretive bulletin on enterprise coverage (29 CFR 779.250) states that goods do not loose their out-of-state identity merely because they may undergo some processing after their shipment in interstate commerce. The Secretary cites as an example the pasteurization of milk which is produced outside of the state, an example very close in substance to the type of processes that occurred in this case. It is well settled that such administrative interpretations are entitled to great weight. Idaho Metal Works v. Wirtz, 1966, 383 U.S. 190, 205, 83 S.Ct. 737, 746, 15 L.Ed.2d 694, 703; United States v. American Trucking Associations, 1940, 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed.2d 1345, and see discussion and authorities cited at note 11, supra
 
 
 [14]
 431 F.2d at 533
 
 
 [15]
 408 F.2d at 629
 
 
 [16]
 See footnote 4, supra
 
 
 [17]
 Appellant's routemen were exempted from the Act under Sec. 13(a)(1) note 4, supra. The Government argues that since these routemen are exempted under the outside salesman exemption of Sec. 13 (a)(1) they must of necessity not be included in the exclusion under Sec. 13(a)(2). Beguiling as the argument is, we do not have to weigh and decide its merits at this time
 
 
 [18]
 The burden rests upon the employer to show facts entitling him to an exemption. Brennan v. Great American Discount and Credit Co., Inc., note 11, supra