Elizabeth DOLE, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

MOREFIELD CONSTRUCTION COMPANY, and Norman L. Morefield, Defendants.

No. 89–CV–73122–DT.

United States District Court, E.D. Michigan, S.D.

Aug. 3, 1990.

Leonard A. Grossman, Office of the Solicitor, U.S. Dept. of Labor, Chicago, Ill., for plaintiff.

Richard P. Diehl, Troy, Mich., for defendants.

## OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

DUGGAN, District Judge.

Plaintiff brought this action to redress alleged violations of the Fair Labor Standards Act of 1938 (the "Act"), as amended, 29 U.S.C. § 201, *et seq.* Before the Court today are cross-motions for summary judgment raising the following issue: Is defendant Morefield Construction Company [1] "an enterprise engaged in commerce or in the production of goods for commerce" as that term is used in 29 U.S.C. § 207(a)(1) and defined in 29 U.S.C. § 203(s)(4)? The Court is of the opinion that defendant is such an enterprise and will thus, grant plaintiff's motion.

> Section 207(a)(1) reads in pertinent part:
>
> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

Plaintiff maintains that defendant has violated this prohibition.[2] According to plaintiff, then, defendant is an "enterprise engaged in commerce or in the production of goods for commerce...." This term, in turn, is defined, in relevant part, as

> an enterprise which has employees engaged in commerce or in the production of goods for commerce, *or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce* by any person which—
>
> \* \* \* \* \* \*
>
> (4) is engaged in the business of construction, of both[.]

29 U.S.C. § 203(s)(4) (emphasis added).[3] The Court agrees. Quite simply, the facts of this case, discussed next, indicate that defendant, a Michigan-based construction outfit, has employees "handling ... or otherwise working on goods or materials that have been moved in or produced for commerce ...", and, thus, is subject to the Act.

In response to plaintiff's interrogatories, defendant acknowledged, *inter alia,* that:

—six trenchers manufactured in Ohio are regularly handled and/or worked on by at least some Morefield employees;

—parts for these trenchers are regularly received from Ohio and are similarly handled and/or worked on; and

—at least some employees regularly handle and/or work on a bulldozer manufactured outside Michigan.

Furthermore, plaintiff asserts (and supports with an affidavit) that the steel rods and tie wires, as well as a portion of the cement used by at least some of defendant's employees also originate outside Michigan. This assertion stands unrefuted.

Notwithstanding the "interstate" activity described above, that is, the movement of

---

**1.** Also named as a defendant is Norman L. Morefield, president of the company. For purposes of this opinion, the Court need not refer to him.

**2.** The other provisions defendant has allegedly violated, 29 U.S.C. §§ 211(c), 215(a)(2) and (5), incorporate § 207(a)(1). Further reference to these other provisions is unnecessary.

**3.** Pub.L. 101–157, 103 Stat. 938 (1989) amended subsection (s). Such enactment established a uniform dollar threshold of $500,000 in gross annual sales, in order to subject an "enterprise" to the Act. The significance of Pub.L. 101–157 is not addressed by defendant. Plaintiff, in contrast, gives it thoughtful consideration, concluding: "[T]he 1989 amendments do not affect this case." Brief, at p. 4. According to plaintiff, defendant grosses over $5,000,000 annually, thus satisfying the threshold imposed by Pub.L. 101–157. (This contention derives from an interrogatory answer submitted by defendant.) As a result, and because subsection (s) as presently *and* formerly worded contains the phrase "employees handling, selling or otherwise working on materials that have moved in ... commerce", a phrase which, as discussed later, the Court considers dispositive, the Court agrees with plaintiff that Pub.L. 101–157 does not affect the outcome of this case.

equipment, parts and supplies across state lines, and the corresponding handling or use of such equipment, parts and supplies by at least some of defendant's employees, defendant contends that it is *not* subject to the Act. In this vein, the employer emphasizes that it dealt almost exclusively [4] with Michigan distributors to obtain needed equipment and supplies. The Court rejects defendant's contention.

In *Wirtz v. Melos Construction Corp.*, 408 F.2d 626 (2nd Cir.1969), the court construed Pub.L. No. 87–30, 75 Stat. 65 (1961) which, as the court explained, "expanded coverage under the Act, in two particulars." 408 F.2d at 627. Describing the second "particular", the court wrote:

> Second, the Section[, *i.e.*, section 2(c) of Pub.L. 87–30] defined "enterprise engaged in commerce or in the production of goods for commerce" to include an enterprise having employees engaged in "handling, selling, or otherwise working on goods that have been moved * * *. [Footnote omitted.]"

*Ibid.* The Second Circuit concluded that the defendant therein was subject to the Act by reason of the expanded definition of the term "enterprise engaged in commerce or in the production of goods for commerce", and discussed relevant legislative history supporting such conclusion. *Id.* at 628. In short, the legislative history convinced the Court that Pub.L. No. 87–30 "was designed to regulate enterprises dealing in articles *acquired intrastate after travel* in interstate commerce.... [Emphasis added.]" *Ibid.*

4. Defendant concedes that repair parts for the trenchers "are purchased from a firm in Cleveland, Ohio[,]" affidavit of Norman Morefield, at paragraph 10, adding that "these repair parts purchases are the sole contracts Morefield Construction Company has with any activity outside of ... Michigan...." *Ibid.*

5. The court in *Melos Construction* observed:
The interstate character of the cement as a product that "has been moved" in interstate commerce is not destroyed by the fact that it is used to make a different product, ready-mix concrete, which is then purchased by Melos from New York suppliers who do not prepare it specifically for Melos. Nor does the mingling of the lumber and other supplies in the stock of the New York dealers from whom

*Melos Construction* disposes of defendant's contention that it, the defendant, is not subject to the Act. In this Court's opinion, the reference in *Melos Construction* to *intrastate* acquisitions is particularly instructive. And the facts there are very similar to those presented here.

In *Melos Construction*, the defendant purchased its materials from in-state dealers. "The principal item purchased by Melos [was] a ready-mix concrete, ... a mixture of cement, sand, gravel, water and certain chemicals." *Id.* at 627. As the Court noted "[t]he concrete is prepared by Melos' suppliers in New York but about 50 percent of the cement used ... is produced outside of New York." *Ibid.*

Here, too, defendant uses pre-mixed concrete supplied by an in-state, *i.e.*, a Michigan, entity. Some of the cement used in the mix, however, is transported into the state.[5] For the purpose of this ruling, the Court accepts as a fact, that some of the cement used in the mix and the steel rods and tie wires originate outside the State of Michigan. In fact, defendant acknowledges that "... its construction supplies ... may have originated in another state ..." Defendant's motion, paragraph 13.

The "interstate character" of such construction supplies, although they may have actually been purchased by defendant within the State of Michigan, is sufficient to bring the defendant within the provisions of the Act.[6]

Melos purchases negate the origin in interstate commerce of these products.
408 F.2d at 629. The observation applies equally in the instant case.

6. In a supplemental brief filed August 3, 1990, defendant argues that more than a *de minimus* amount of materials must move in interstate commerce to subject an enterprise to the Act, *i.e.*, that the amount must be *substantial*. However, defendant cites no case authority for the proposition that the amount involved is a factor to be considered by the Court. In any event, the Court believes that the amount of "interstate" materials that defendant acknowledged is involved, *i.e.*, in dollar value, between 6% and 11% of its gross annual sales, is sufficient to subject defendant to the Act.

1234

For the reasons expressed in *Melos Construction*, cited with approval in *Schultz v. Deane–Hill Country Club, Inc.*, 310 F.Supp. 272 (E.D.Tenn.1969), *aff'd* 433 F.2d 1311 (6th Cir.1970), defendant is subject to the Act. *See also Donovan v. Pointon*, 717 F.2d 1320 (10th Cir.1983). Defendant's citations do not counsel otherwise for such cases either (1) interpret the Act as worded *prior* to the enactment of Pub.L. No. 87–30, which, as discussed in *Melos Construction*, greatly expanded coverage or (2) involve what is known as "individual" coverage, as distinct from "enterprise" coverage.[7]

For the reasons stated,

IT IS ORDERED that defendant's Motion for Summary Judgment is DENIED.

IT IS FURTHER ORDERED that plaintiff's Motion for Partial Summary Judgment is GRANTED.

---

7. There are essentially two ways in which employees gain protection under the Act. *First,* the employees may *themselves* be engaged in commerce or in the production of goods for commerce and thus enjoy "individual" coverage. *Second,* the employees may be employed in an *enterprise* engaged in commerce or in the production of goods for commerce, enjoying "enterprise coverage". See 29 U.S.C. § 207(a)(1), quoted earlier. The plaintiff's theory in this case is "enterprise", not "individual", coverage.