Joe **GRIMES**, Appellant,

v.

Harry **CASTLEBERRY**, d/b/a Castleberry Furniture Showroom,
Appellee.

No. 23934.

United States Court of Appeals
Fifth Circuit.

July 11, 1967.

Benton Musslewhite, Lufkin, Tex., for appellant.

Martin Dies, Jr., Lufkin, Tex., for appellee.

Before RIVES, WISDOM and GOLDBERG, Circuit Judges.

PER CURIAM:

After consideration, we find ourselves in full agreement with the decision and the able opinion of the learned district court judge.[1]   That opinion is appended as an exhibit hereto and is adopted as the opinion of this Court.

Affirmed.

1. Now deceased.

**EXHIBIT**

Filed Jan. 28, 1966, James R. Cooney, Clerk, U. S. Court, By Myra Barton, Deputy.

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF TEXAS, TYLER DIVISION

Civil No. 4497.

JOE GRIMES,

versus

HARRY CASTLEBERRY, D/B/A CASTLEBERRY FURNITURE SHOWROOM.

Benton Musslewhite, Esquire, Lufkin, Texas; Kirchheimer & Kirchheimer, Houston, Texas, ATTORNEYS FOR THE PLAINTIFF.

Martin Dies, Jr., Esquire, Lufkin, Texas, ATTORNEY FOR THE DEFENDANT.

**OPINION**

The Plaintiff, a former employee of the Defendant Castleberry Furniture Showroom, has brought this action under the Fair Labor Standards Act of 1938 (29 U.S.C.A. §§ 201–219), hereinafter referred to as the Act, seeking to recover unpaid minimum wages and overtime compensation for the period of January 1 through August 14, 1964, together with liquidated damages and attorney's fees. The Plaintiff alleges and contends that the Defendant, as owner and operator of two retail furniture stores and a warehouse or storeroom wherein there was received, unloaded and stored various items of back-up merchandise which were shipped from out of state suppliers and manufacturers, was engaged in interstate commerce within the provisions of the Act; that due to the Plaintiff's duties and responsibilities in connection with the warehouse, he was an employee whose work was closely, immediately and essentially related to the interstate aspects of the Defendant's business; that the Plaintiff was paid at the rate of only $1.06 per hour for the first 40 hours per week; and that he worked an additional 24 to 26 hours per week overtime.

The Defendant, contending that his business is not one which is covered by the provisions of the Act, admits that he did not compensate Plaintiff in accordance with the minimum wage and overtime compensation provisions of the Act and did not keep a record as to the time worked by his employees or the compensation paid to them in the manner required by the regulations promulgated by the United States Department of Labor. The Defendant also admits that the Plaintiff was employed as a truck driver and trucker's helper, and to perform manual labor in and about the store and the warehouse or storeroom, and admits further that the Plaintiff is not covered by the provisions of the Interstate Commerce Act and, therefore, is not an exempt employee under the terms of Sec. 213(b) of Title 29 U.S. C.A. The Defendant further admits that the Plaintiff was paid a salary during the period in question of $42.50 per week, and that he was employed to work six days per week, eight hours per day, and that he actually worked an additional two to three hours per week overtime. Defendant contends that he has made loans and advances to the Plaintiff in the total amount of $1,583.05, which should be set off and deducted from any amount which the Plaintiff might recover in this action.

The Defendant, Harry Castleberry, is the sole owner and operator of Castleberry Furniture Showroom, which is located in Lufkin, Angelina County, Texas. Castleberry Furniture Showroom began operating April 1, 1962, and at all times pertinent to this suit has been engaged in the business of selling at retail household furniture and other items pertaining to household furniture and furniture goods. In connection with his retail furniture business, the Defendant also leased a building on Angelina Street approximately two blocks from the Lufkin store. This space was used as a warehouse or storeroom to keep back-up

merchandise for the retail store operation. This storeroom measured approximately 25' x 35'. On January 1, 1964, the Defendant acquired a second retail furniture store located in Nacogdoches, Texas. This store was operated for exactly one year and was closed December 31, 1964. This business also operated under the name of Castleberry Furniture Showroom, but the records, books, and bank account for each store were maintained separately. A small storeroom was also maintained for about six to eight weeks in Nacogdoches in connection with the retail store there.

The merchandise kept in the warehouses or storeroom in Lufkin represented the general line of stock sold by the Defendant. Approximately 25% of this stock was manufactured at some point out of the State of Texas. From time to time, shipments of merchandise which had been transported in interstate commerce would be received, unloaded and the merchandise stored in the Angelina Street building. Merchandise remained in the building for varying periods of time depending on the needs for stock in the retail store. When merchandise was needed at either the Lufkin or the Nacogdoches retail locations, the required items of merchandise would be transported from the Angelina Street building to the store where it was needed. The value of the merchandise kept in storage varied from approximately $2,000.00 to $5,000.00, and generally represented less than 10% of the total stock on hand. Ordinarily, more than 90% of the total stock on hand would be displayed on the showroom floor at one of the two retail locations. For the year 1964, the gross sales from both the Nacogdoches and Lufkin retail stores amounted to $150,933.64, with a net profit of $4,393.27.

The Plaintiff, Joe Grimes, was employed by the Defendant on May 9, 1962, and worked continuously through August 14, 1964, when he received an injury and required hospitalization. During the period in question in this action, Plaintiff received a salary of $42.50 per week. While there was no specific agreement as to his hours at the time of his employment, he was generally expected to work from 8:00 a. m. to 5:00 p. m., with an hour off for lunch, six days per week. His duties included driving a truck, making deliveries to customers, doing general clean up in and about the premises at the retail location in Lufkin and the Angelina Street building, receiving and unloading shipments of merchandise from manufacturers and wholesale jobbers at both the retail location and Angelina Street building, and even on occasion making sales to customers. The Defendant had given the Plaintiff Grimes keys to both the Lufkin retail store and the Angelina Street building.

In all cases of this nature, the first question that the Court must consider is that of coverage under the Act. The Plaintiff contends that as an employee of the Defendant he was "engaged in commerce or in the production of goods for commerce" so as to bring him under the provisions of 29 U.S.C.A., Secs. 206 and 207.

Throughout the period in question, the Defendant regularly received in connection with his furniture business various items of merchandise which had been shipped from points of origin outside of the state and transported in interstate commerce. Joe Grimes was designated by the Defendant as one of the persons to receive and unload such shipments. If Grimes were not present, the goods would be received by either the Defendant or another employee, and one of the other employees occasionally would assist Grimes in unloading the goods at the Angelina Street building. While the estimates of the time that Grimes spent in exercising his duties at the warehouse is the subject of considerable dispute under the evidence in the record, the Court finds that at even the most conservative estimates he unloaded furniture which had been transported interstate at least once a week, and frequently two to three times per week.

■ For an employee to be covered under the Act, it is not necessary that all of his employer's business be shown to have an interstate character. It is the nature and extent of the employee's duties of employment, not the character of employer's business, which is controlling on the question as to whether the employee is so engaged in commerce as to come within the purview of the Act. Kirschbaum Company v. Walling, 316 U.S. 517, 524, 62 S.Ct. 1116, 86 L.Ed. 1638 (1941). All that is required is that it be shown that a *substantial part* of the employee's activities relate to the movement of goods in interstate commerce. Walling v. Jacksonville Paper Company, 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460 (1943). If an employee regularly and continuously performs duties related to interstate commerce, then he is substantially engaged in commerce within the meaning of the Act. The fact that such duties are only a slight or small percentage of the total duties performed by the employee is of no consequence. Tilburry v. Rogers, 123 F. Supp. 109 (W.D.La.1954), affirmed per curiam in Tilburry v. Mitchell, 220 F.2d 757 (5th Cir. 1955).[1]

In Fleming v. Jacksonville Paper Company, 128 F.2d 395 (1942), the Court of Appeals for the Fifth Circuit held that the` employees at the warehouses from which only sales within the State of Florida were made but who worked at buying and receiving goods from outside the State of Florida were employed in interstate commerce and covered by the Act, and in so holding stated;

"Those who work either at selling or delivering across State lines, or buying and receiving across State lines, are employed in commerce, whether they write the letters, keep the books, or load and unload or drive the trucks * * * *The unloading at destination* of an interstate shipment is work in interstate transportation, whether done by the carrier or another.* Baltimore & O.S.W.R.R. v. Burtch, 263 U.S. 540. [44 S.Ct. 165, 68 L.Ed. 433]." (Emphasis added) 128 F.2d at 398.

In the case of Mitchell v. Sunshine Department Stores, Inc., 292 F.2d 645 (1961), the Court of Appeals for the Fifth Circuit stated that " * * * all of the central office and warehouse employees who devote a 'substantial part' of their work to the receipt, handling, storage and distribution of the (interstate) merchandise are 'engaged in commerce' within the meaning of Section 7(a) of the Act." 292 F.2d at 648. See also Mitchell v. Royal Baking Company, 219 F.2d 532 (5th Cir., 1955); Stewart-Jordan Distributing Company v. Tobin, 210 F.2d 427 (5th Cir., 1954).

■ In the light of these cases, and the fact that the Plaintiff in this case regularly and recurrently performed such services as the receipt, handling and storage of items of merchandise which had been transported from manufacturers in other states, the Court finds that during each of the work weeks involved herein Joe Grimes was "engaged in commerce" within the meaning of the Act.

■ Therefore, Plaintiff is entitled to recover in this case, unless, as is contended by the Defendant, his employment falls within the exemption provided by Sec. 213(a) (2) of Title 29 U.S.C.A. The pertinent portion of this section specifically excludes from coverage under the Act any employee of a retail establishment of which more than 50% of the annual dollar volume of sales of goods is made within the state in which it is located, and which has an annual dollar volume of sales of less than $250,000.00. During the period in question, Defendant's furniture stores, jointly, fell within

[1]. See Southern California Freight Lines v. McKeown, 148 F.2d 890, 892 (9th Cir., 1945) in which "substantial" was held to include an employee who spent 7% of his working time in interstate commerce; McComb v. W. E. Wright Company, 168 F.2d 40 (6th Cir. 1948), in which employees who spent 3.57% of their time unloading and storing goods in interstate commerce were held to be covered by the Act.

this category. However, it is Plaintiff's contention that the retail employees' exemption is not applicable to him in this case during the period from January 1 through August 14, 1964, because of the fact that a substantial part of the Plaintiff's employment during, this period was in connection with the operation of the warehouse which was engaged in servicing and supplying goods to more than one retail outlet.

■ As a general rule, the Courts have refused to place within the exemption of Sec. 213(a) (2) employees in a warehousing operation engaged in receiving and storing interstate goods, and later distributing them to retail establishments whose independent operations are clearly within the scope of the exemption. See A. H. Phillips, Inc. v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095 (1945); Mitchell v. Sunshine Department Stores, Inc., 292 F.2d 645 (5th Cir., 1961). However, in each instance where the Courts have refused to apply the retail employee exemption, the warehousing operations involved were substantially larger and conducted in a very different manner from the business operations involved in this case.

For example, in the *Sunshine* case, the Defendant owned and operated five retail department stores in and around Atlanta, Georgia, with more than a million dollars in annual volume. A single warehouse was maintained where approximately 90% of all of the merchandise was received and stored until shipped to retail stores pursuant to weekly orders sent in by each of the stores. The crux of the Courts holding in that case was its determination that

"* * * it is apparent that Sunshine's warehouse and central office operates on a *wholesale level*, physically and functionally apart from the individual retail stores, [thus] the warehouse and central office employees do not qualify for the 'retail establishment' exemption contained in Section 13(a) (2)". (emphasis added) 292 F. 2d at 648.

In the *Phillips* case, the Defendant maintained one warehouse which serviced 49 retail stores. With but few exceptions, all of the merchandise was delivered by truck to that warehouse where it was divided and then delivered by the Defendant's trucks to the individual stores according to need. Each week a regular order was delivered to the store from the warehouse and additional deliveries were made as required. All of the Defendant's sales were made exclusively at the retail stores and no deliveries to customers were made directly from the warehouse. Under these facts, the Supreme Court found that the employees in the Defendant's warehouse did not come within the exemption of the Sec. 213(a)(2), stating;

"In a realistic sense, therefore, most chain store organizations are merchandising institutions of a *hybrid retail-wholesale nature*. They possess the essential characteristics of both the retailer and the wholesaler. Their wholesale functions, which are integrated with but are physically distinct from their retail functions, are performed through their warehouses and central offices. *That fact is the essential key to the problem presented by this case. It serves to make clear the inapplicability of Section 13(a) (2) to petitioner's warehouse and central office employees.*" (Emphasis added) 324 U.S. 490, at pages 495–496, 65 S.Ct. at page 809.

■ Thus, the situations in which warehouse employees have been found not to be included within the retail exemption is in those instances in which the warehouse or central office maintained by the defendant is operated in such a manner as to be a substitute for the wholesaler, intermediary, or independent middle man in moving goods from a producer to the retailer. In other words, this rule has been applied only to those businesses in which the warehousing operation is essentially that of a wholesaler in character and purpose, thus creating a situation where the intermediary function has been taken over by

a retailer acting through his own warehouse-wholesale unit, even though he supplies only his own retail operations.

 The facts in the case at hand are clearly quite different from those in the cases relied upon by the Plaintiff. The operation of the storeroom or warehouse on Angelina Street can by no stretch of the imagination be construed as a wholesaling operation. The character of the enterprise involved in this case is better described as that of a small retail establishment which maintained more than 90% of its total merchandise stock on display upon the floors of its two retail outlets, and merely maintained a storeroom, which happens to be at a separate location, as a place in which to keep its excess merchandise and a relatively small amount of back-up stock for its showrooms.

It is clear from the legislative history of the Fair Labor Standards Act, and particularly the history of Sec. 213(a) (2), that Congress was interested in exempting those regularly engaged in local retailing activities, and those employed by small, local establishments, epitomized by the corner grocery, local drug store and local department store. See 83 Congressional Record 7299, 7436–7438. Congress felt that retail concerns of this nature do not sufficiently influence the stream of interstate commerce to warrant imposing the wage and hour requirements upon them. The business enterprise involved in this case is clearly of the size and nature contemplated by Congress when it enacted the provisions for the retail employees exemption. The mere fact that the Defendant stored a small percentage of back-up merchandise in a 25' x 30' storeroom does not establish it as a "warehousing operation" exercising the essential functions of a wholesaler, and thus removing it from the retailer's exemption. To so hold, in this Court's opinion, would constitute a clear violation of the legislative policy and purpose embodied in the enactment of said Sec. 213(a) (b). The Court, therefore, finds and concludes that the Plaintiff comes within

the exemption of Sec. 213(a) (2) and that he has no claim for unpaid minimum compensation or overtime wages under the provisions of that Act.

The Clerk will forthwith enter judgment to the effect that the Plaintiff take nothing, that the action be dismissed on the merits, and that the Defendant recover of the Plaintiff his costs of action.

This Opinion will constitute the Findings of Fact and Conclusions of Law in this case.

DATED this 28th day of January, 1966.

JOE W. SHEEHY
UNITED STATES
DISTRICT JUDGE
Civ. Order Book, Vol. 20, Page 89.