James D. HODGSON, Secretary of Labor, United States Department of Labor (Substituted as Plaintiff for George P. Shultz, resigned), Plaintiff,

v.

SERVOMATION–AJAX CO., Inc., a Corporation, and Servomation Corporation, a Corporation, Defendants.

No. EC 7019.

United States District Court, N. D. Mississippi, E. D.

March 5, 1971.

James E. Price, of Stovall & Price, Corinth, Miss., for plaintiff.

George D. Palmer, U. S. Dept. of Labor, Birmingham, Ala., for defendants.

## MEMORANDUM OPINION

ORMA R. SMITH, District Judge.

This action brought pursuant to Section 17 of the Fair Labor Standards Act of 1938 (29 U.S.C.A. § 201 et seq.), hereinafter referred to as the Act, was tried to the court at Aberdeen, Mississippi on February 18, 1971, and has been submitted on the record, pre-trial order, evidence introduced and stipulations made at the trial as shown by the reporter's notes, and pre-trial memorandums of law submitted by the parties. This memorandum of decision contains the court's findings of fact and conclusions of law required by Rule 52(a) Fed.R.Civ.P.

Servomation-Ajax Co., Inc., a Mississippi corporation, is a wholly owned subsidiary of Servomation Corporation, a New York corporation.[1] Servomation, dispensing through vending machines, has been engaged in the business of selling sandwiches, entrees, candies, beverages and other items of a similar nature[2] in the Corinth, Mississippi area since March 1968.

Servomation Corporation does not have employees, as such, in the Corinth plant, but reports concerning Servomation's operation at Corinth are made monthly to a central office of Servomation Corporation at Nashville, Tennessee, where final accounting figures are entered, bills paid, etc. Servomation Corporation has an executive who is charged with the duty of overseeing the operation of the Corinth plant. Approximately ten per cent of the food and beverages dispensed by Servomation are delivered to vending machines in the States of Alabama and Tennessee. The balance is delivered to

---

1. The Mississippi corporation will be referred to in this Memorandum as "Servomation". When reference is made to the parent company, such defendant will be referred to by its full name "Servomation Corporation".

2. The items sold by Servomation through its vending machine operation will be referred to in this memorandum for convenience sake, as "food and beverages".

vending machines situated in Mississippi.

There are but two issues presented to the court in this action.

■ One issue is whether Servomation Corporation is a proper defendant. The control exercised over the operation of Servomation by Servomation Corporation is, in the opinion of the court, sufficient to charge Servomation Corporation with the responsibilities of an employer under the Act. While Servomation is a separate corporate entity, it is under the complete domination and ultimate control of Servomation Corporation. The corporate affairs of Servomation are under the control of Servomation Corporation's executive officer, who has the last voice over all matters of importance concerning Servomation's activities. The general books of Servomation are kept by Servomation Corporation, and Servomation Corporation handles all receipts and disbursements of Servomation. The term "Employer" is defined by the Act to include "any person acting directly or indirectly in the interest of an employer in relation to an employee".[3] In Shultz v. Chalk-Fitzgerald Construction Co., 309 F.Supp. 1255, 1257 (D.C.Mass.1970), the court said:

"* * * Congress has in effect provided that for the purposes of the Act any person who acts directly or indirectly in the interest of an employer in relation to an employee shall be subject to the same liability as the employer. As to such person, liability is predicated not on the existence of an employer-employee relationship between him and the employee but on the acts he performs in the interest of the employer in relation to the employee. It makes no difference whether such person is a stockholder or officer of the corporate employer. Indeed, it makes no difference whether the employer is a corporation or a natural person."

The domination and control which Servomation Corporation exercises over the affairs of Servomation are sufficient to render Servomation Corporation liable herein to the extent, if any, as Servomation may be liable.

The second issue involves the kitchen employees of Servomation in its place of business at 101 East Fifth Street in Corinth. Prior to the 1966 amendments to the Act certain retail establishments were exempt from coverage under the Act. Before the adoption of the amendments Section 13(a) (20) (29 U.S.C.A. § 213(a) (20)), provided:

"(a) The provisions of sections 206 and 207 of this title shall not apply with respect to—

* * * * * *

(20) any employee of a retail or service establishment who is employed primarily in connection with the preparation or offering of food or beverages for human consumption, either on the premises, or by such services as catering, banquet, box lunch, or curb or counter service, to the public, to employees, or to members or guests of members of clubs;"

Defendants have accepted the fact that the kitchen employees above mentioned are presently covered by the Act and defendants are presently complying with the minimum wage and overtime provisions of the Act. There is no current problem in this regard. The controversy arises out of the contention by defendants that the kitchen employees are within that class of employees who were exempt from the coverage of the Act by virtue of the above mentioned exception, but who were brought within the purview of Section 6 of the Act (29 U.S.C.A. § 206) by the 1966 amendments. The 1966 amendments provide for a gradual increase in the minimum rate of pay for those coming under the coverage of the Act for the first time because of the amendments.

The principal question for the court's decision resolves itself into this: Is

3. 29 U.S.C.A. § 203(d).

defendants' place of business at 101 East Fifth Street in Corinth a "retail establishment" within the meaning of the exemption aforesaid?

The relevant facts are without substantial dispute. The premises at 101 East Fifth Street consist of a one story brick building and parking facilities. The building houses an office where the records of the company are kept, a storage area in which foods and beverages purchased as items already prepared are stored, a repair shop in which vending machines are repaired, and a kitchen in which sandwiches, entrees and similar items are prepared and packaged.

We are not concerned with areas in the building other than the kitchen, except such areas as are material to the determination of the establishment issue.

Servomation employs a local office-manager and bookkeeper. These employees perform most of their work in the office and storage area. The bookkeeper checks the supplies into and out of the storage area, and keeps and maintains the records of the company. The office-manager assists in checking supplies into and out of the storage area, and after receiving the supplies moves them into bins in the storage area assigned to the several truck delivery employees.

The sole mechanic works in the repair shop, maintaining and repairing vending machines which are brought in for repair. He also checks and repairs machines in the field.

The kitchen employees receive supplies which are stored either in refrigerated areas or in the open, depending upon the nature of the merchandise. The employees process the supplies or merchandise into sandwiches, entrees and other packaged food.

The public does not have access to Servomation's place of business. The food and beverages are turned over to truck drivers who deliver them to the several industrial plants where Servomation's vending machines are located.

Servomation arranges with management at each industrial plant to locate vending machines in the plant. It is the custom for management to set aside a place in the plant where Servomation can place the vending machines. Servomation installs tables, chairs and other restaurant equipment in the lunch area. The employees of the plant come to this area and purchase food and beverages through the vending machines. They consume the food and beverages in the place and with the facilities provided by Servomation. It is customary, though such is not the case in every instance, for Servomation to employ a hostess to look after the vending machine area of the plant. The hostess receives packages of food and beverages which are inserted by her in the machines. She makes change for customers and keeps the lunch area clean.

The building at 101 East Fifth Street is not adjacent to any place where food and beverages are sold through vending machines. Employees in the kitchen or at the building, however, may buy food and beverages at retail prices for personal consumption on the premises. Otherwise, no member of the public is served there.

Defendants contend that the building at 101 East Fifth Street is properly classified as an adjunct to and a part of a single retail establishment engaged in the business of operating vending machines at numerous industrial plants in the area. Thus, defendants contend that the place of business at the aforesaid location is a "retail establishment" within the meaning of the Act.

Servomation began business at 101 East Fifth Street in Corinth during March 1968. In April, 1968 plaintiff's representatives advised defendants of plaintiff's position that the place of business at the address aforesaid did not qualify as a "retail establishment" and that defendants were not meeting the minimum wage and overtime requirements of the Act. Again in October, 1969 plaintiff's representatives made an inspection of defendants' place of busi-

ness and again advised them of plaintiff's position in the matter.

Throughout the period until February 1, 1971, defendants substantially complied with the lower standards of the Act provided by the 1966 amendments, but did not comply with the higher standards ($1.60 an hour and time and one-half after 40 hours in each work week) which are required if plaintiff's position is correct.

An Opinion letter of the Wage-Hour Administrator, issued December 18, 1963 (Opinion Letter No. 221), states the position of the Department "that the typical vending machine company which has substantially all of its machines located away from the main establishment may not qualify as a retail or service establishment as that term is defined in Section 13(a) (2) of the Act".[4] The rules and regulations of the Wage and Hour Division, Department of Labor, Part 779.319 (29 CFR Part 779.319) provides, inter alia, as follows:

"§ 779.319 A retail or service establishment must be open to general public.

The location of the retail or service establishment, whether in an industrial plant, an office building, a railroad depot, or a government park, etc., will make no difference in the application of the exemption and such an establishment will be exempt if it meets the tests of the exemption. *Generally, however, an establishment, wherever located, will not be considered a retail or service establishment within the meaning of the Act, if it is not ordinarily available to the general consuming public.* An establishment, however, does not have to be actually frequented by the general public in the sense that the public must actually visit it and make purchases of goods or services on the premises in order to be considered as available and open to the general public. A refrigerator repair service shop, for example, is available and open to the general public even if it receives all its orders on the telephone and performs all of its repair services on the premises of its customers." (Emphasis added).

Plaintiff contends that the location at 101 East Fifth Street does not qualify

---

4. Opinion Letter No. 221 (Commerce Clearing House, Labor Law Reporter, Wage-Hours, Administrative Rulings, Para. 30,814,) provides:

"This is in reference to your letter concerning the application of the Fair Labor Standards Act to the vending machine operations of one of your clients.

In your opinion the operations of your client fall within the definition of a retail or service establishment which is contained in section 13(a) (2) of the Act, and that the exemption contained in section 13(a) (20) of the act is applicable to your client's employees.

Your letter does not contain enough facts to enable us to determine specifically how the act applies to the employees of your client. However, it is the Department's position that the typical vending machine company which has substantially all of its machines located away from the main establishment may not qualify as a retail or service establishment as that term is defined in section 13(a) (2) of the act. This is the case because the vending establishment where food is stored and prepared usually performs the func-

tion of the commissary in Walling v. Armstrong [12 LC para. 63,743], [1 Cir.], 161 F.2d 315 [515], the manufacturing and processing operations of the chain in American Shores [Stores] Co. v. Walling [6 LC para. 61,449], [3 Cir.], 133 F.2d 840, and Goldblatt Bros. v. Walling [10 LC para. 62,848], [7 Cir.], 152 F.2d 475, Cert. den. 318 U.S. 757, [328 U.S. 854, 66 S.Ct. 1344, 90 L.Ed. 1627], and the central office and warehouse functions of the chain's operations involved in Phillips Inc. v. Walling [9 LC para. 51,196], 324 U.S. 490, [65 S.Ct. 807, 89 L.Ed. 1095] and Mitchell v. Miller Drugs Inc. [34 LC para. 71,541], [1 Cir.], 255 F.2d 574.

Since the typical vending establishment described above may not qualify as a retail or service establishment and since the 13(a) (2) exemption applies only to employees of a retail or service establishment who are engaged in the named operations, (see section 779,392 et seq. of 29 CFR Part 779) the 13(a) (2) exemption is unavailable for exemptive purposes."

for an exemption as a "retail establishment" because the premises are not open to the public and no retail sales are made there. The facts in this action show that the place of business is not "ordinarily available to the general consuming public".

The generally accepted rule is that exemptions from the coverage of the Act are to be narrowly construed. A. H. Phillips, Inc. v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095 (1945); Mitchell v. Kentucky Finance Co., 359 U.S. 290, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959); Wirtz v. Keystone Readers Service, Inc., 418 F.2d 249 (5th Cir. 1969). The application of such exemptions is limited to those establishments plainly and unmistakably coming within their terms and spirit. Arnold v. Kanowsky, 361 U.S. 388, 80 S.Ct. 453, 4 L.Ed.2d 393. The employer who asserts that his establishment is exempt must assume the burden of providing facts which plainly and unmistakably show that the exemption exists. Arnold v. Kanowsky, supra; Acme Tire and Battery Company v. Wirtz, 330 F.2d 116, 118 (5th Cir. 1964).

The position of the Wage-Hour Administrator and his rulings and interpretations, "while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance". Skidmore v. Swift and Company, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124, 129; Mabee v. White Plains Pub. Co., 327 U.S. 178, 182, 66 S.Ct. 511, 90 L.Ed. 607, 611 (1946).

The "Retail Establishment" exemption applies only to " * * * 'establishments,' and not to businesses in their entirety. Thus the pertinent inquiry is not whether the business enterprise as a whole is engaged in retailing, but whether the particular *establishment* under scrutiny is engaged in retailing. * * * " Wirtz v. Keystone

Readers Service, Inc., 418 F.2d 249, 254 (5th Cir. 1969). The "Retail Establishment" exemption from application of the Act does not apply to all retailers, but only to fixed retail establishments. Wirtz v. Keystone Readers Service, Inc., supra.

In A. H. Phillips, Inc. v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095 (1945), Phillips, the petitioning corporation, operated 49 retail grocery stores in cities and towns within a 35-mile radius of Springfield, Massachusetts. Of these stores 40 were in Massachusetts and 9 were in Connecticut. Quite apart from these retail stores, Phillips maintained a separate warehouse and office building in Springfield, which serviced all of the 49 stores. The employees in the warehouse performed the usual duties of a warehouseman and those in the central office, located in the warehouse building, performed usual bookkeeping services. The employees involved in the case worked in the warehouse and in the central office. All sales made by Phillips were made exclusively at the retail stores and no deliveries to customers were made from the warehouse. The court held "that the warehouse and control office of petitioner's chain store system cannot properly be considered a retail establishment within the meaning of Section 13(a) (2)". In answer to Phillips' claim that its retail stores, warehouse and central office together constituted a "retail establishment", within the meaning of the retail establishment exemption of the Act, the court said:

" * * * But if, as we believe Congress used the word 'establishment' as it is normally used in business and in government—as meaning a distinct physical place of business— petitioner's enterprise is composed of 49 retail establishments and a single wholesale establishment. Since the employees in question work in the wholesale establishment, § 13(a) (2) is plainly irrelevant." [5]

---

5. 65 S.Ct. at 810, 89 L.Ed. at 1100.

In Armstrong v. Walling, 161 F.2d 515 (1st Cir.1947) a case in which the facts are similar to the facts in the action sub judice, the court held that a commissary department of a corporation which maintained retail stands and selling counters in railroad stations at places easily accessible to the public and at which sandwiches, coffee, milk, candy, books, periodicals and smoking supplies were sold by clerks to the public, was not a "retail establishment", within the purview of the provisions of the Act exempting employees of "retail or service establishments". The facts in the case showed that the commissary department was situated in one of the stations served by the corporation and had direct communication with the stands on the concourse of the station by means of an arcade, which was used as a sidewalk by the general public. The court said:

> "The commissary is integrated with, but physically distinct from, the stands in the station where the retail functions are carried on. It is a distinct place of business and is an establishment under the Act. It bears no closer relationship to the stands in the concourse than it does to the other stands in the various railroad stations inside and outside Massachusetts, and to the train service department [Citations omitted]. There are no sales there and no retail transactions of any kind. Its only business is supplying the stands throughout the system and the railroad train service. The business carried on there more closely resembles that of a warehouse or wholesale establishment than a retail store. [Citations omitted]. While the business in the commissary may not be of a wholesale nature it certainly is not of a retail nature and to bring it within the exemption of § 13(a) (2) the burden is upon the appellant to prove that its employees are within the letter and spirit of the exception." [6]

The rationale of *Phillips* and *Armstrong* has been followed by the Fifth Circuit in several cases brought to the attention of the court. See Wirtz v. Keystone Readers Service, Inc., supra (where the court held that the central office of a magazine subscription business engaged primarily in the work of order verifications, making payroll computation, collection of outstanding installment contracts, but which was not held out to the consuming public as a place where magazines could be purchased and in which no sales were made and which was not equipped to make magazine sales, was not a "retail establishment" within the scope of the retail establishment exemption of the Act); and Schultz v. Kip's Big Boy, Inc., 431 F.2d 530 (5th Cir. 1970) (where the court held that the retail exemption of the Act was not applicable to employees in a commissary operated by the owner of a string of restaurants and a warehouse). In *Kip's Big Boy*, the court said:

> "Appellee admits in its brief that 'It is recognized by the appellee that the great bulk of all the case law dealing with exemptions and the applicability of the exemption to central offices, central warehouses or central processing facilities deny the application of the exemption * * *' This is the holding of this court in Mitchell v. Sunshine Department Stores, *supra*, [292 F.2d 645]. Appellee has not made a valid distinction between Kip's and the employers in the cases decided by this and other courts. See Phillips, Inc. v. Walling, 324 U.S. 490, 494–496, 65 S.Ct. 807, 89 L.Ed. 1095. The trial court erred in holding that the retail store exemption applied to this commissary and warehouse." [7]

Shultz v. Adair's Cafeterias, Inc., 420 F.2d 390, involved the coverage of twenty seven employees of a central bakery operated by defendants and in which pies and other pastries were prepared for delivery to eating establishments owned and operated by defendant in and about the city where the bakery was situated.

6. 161 F.2d at 516–517.

7. 431 F.2d at 535.

The district court refused to test the enterprise of defendants for exemption on an individual establishment basis. Instead the court viewed all businesses, including the bakery, together, as being proprietarily united and functionally integrated. The physical separation of the bakery from the eating establishment was considered immaterial. The Tenth Circuit, in reversing the district court said:

"The exemption in § 213(a) (2) has a limited reach, touching only those retail or service establishments as are comparable to the local corner grocery store, local drug store or local department store which sells directly to the ultimate consumer. Prosperous retail businesses eventually lose their identity as establishments exempt from the Act. It may occur through an increased volume of interstate sales or, as here, by physically serving a nonexempt establishment. A company operating numerous food stores cannot include as a part of its retail business its candy kitchens. Fred Wolferman, Inc. v. Gustafson, 169 F.2d 759 (8th Cir. 1948). The operator of sandwich counters cannot include as retail its commissary where sandwiches are prepared. Armstrong Co. v. Walling, 161 F.2d 515 (1st Cir. 1947). Similarly, a restaurant-cafeteria chain may not include its bakery as part of its retail establishments. * * * " [8]

Defendants cite and rely upon three recent Fifth Circuit cases: Brewer's Inc. v. Wirtz, 375 F.2d 911 (5th Cir. 1967); Grimes v. Castleberry, 381 F.2d 758 (5th Cir. 1967); and Lewis v. Brandt Furniture, Inc., 402 F.2d 265 (5th Cir. 1968).

In *Brewer's Inc.* the Fifth Circuit held that three small sheds used to store furniture to be shown later in showrooms as well as damaged and traded-in furniture, some of which was sold directly from the storage area, were an integral part of the furniture stores whose furniture they contained and were not warehouses; and that employees who worked in the sheds were employed by an exempt retail establishment.

*Grimes* also involved a warehouse which served as a storage area for retail furniture stores. The warehouse was used primarily to store merchandise for the retail outlets. Grimes, an employee of Castleberry, was one of the employees designated to receive and unload the goods at the warehouse. Grimes claimed that he was an employee covered under the Act because the warehouse did not qualify as a "retail establishment". Grimes brought suit against his employer for unpaid minimum wages and overtime compensation. In holding against Grimes the court said:

"The facts in the case at hand are clearly quite different from those in the cases relied upon by the Plaintiff. The operation of the storeroom or warehouse on Angelina Street can by no stretch of the imagination be construed as a wholesaling operation. The character of the enterprise involved in this case is better described as that of a small retail establishment which maintained more than 90% of its total merchandise stock on display upon the floors of its two retail outlets, and merely maintained a storeroom, which happens to be at a separate location, as a place in which to keep its excess merchandise and a relatively small amount of back-up stock for its showrooms." [9]

Lewis v. Brandt Furniture Co., Inc. involved a warehouse at which large appliances and bulky pieces of furniture were received and stored, until needed at the retail stores served by the warehouse. No employees were stationed at the warehouse and no records were kept there. No separate inventory was kept of the merchandise in the warehouse. The court followed the decision in *Grimes*, and said:

"Appellant-employees contend that the use made of this warehouse shows

8. 420 F.2d at 394–395.

9. 381 F.2d at 764.

that it was a separate wholesale warehousing establishment, serving a 'wholesale function,' and that the retail exemption provisions of the Act do not apply. For the reasons enumerated in Grimes v. Castleberry, 381 F.2d 758 (5th Cir. 1967), and Brewer's Inc. v. Wirtz, 375 F.2d 911 (5th Cir. 1967), we reject such a characterization and uphold the district court's determination that this storage area was used as nothing more than a space to keep back-up merchandise for the Crowley and Rayne stores. * * * " [10]

*Brewer's Inc., Grimes* and *Lewis* are distinguishable from the action sub judice. Each case involved, as was said in *Lewis,* a warehouse which was used as nothing more than a "space to keep back-up merchandise" for the retail furniture store, and, in *Brewer's, Inc.* retail sales were made directly from the warehouse. In the action sub judice no retail sales are made at the kitchen and the area is not used solely as a space to keep back-up supplies for the vending machines operated by defendants.

In the action sub judice food and beverages are prepared and packaged in defendants' building at the location aforesaid.

Another Fifth Circuit case cited by defendants is Mitchell v. T. F. Taylor Fertilizer Works, 233 F.2d 284 (5th Cir. 1956). The issue in *Taylor* was whether Taylor's fertilizer dry mixing plant and office were exempt as a retail establishment by Section 13 of the Act. The plant was located in the industrial section of the city. All orders were handled in an office five blocks away, in the business district. In the office all records were maintained, all orders were turned in, and all invoices and dray bills written up. The deliveries were made from the plant and all sales were made direct to the farmer for farm use. The court did not sustain the Secretary's contention that the plant and office were separate establishments. The court held that the plant and office were but a single establishment, they being functionally an entity. Referring to Bogash v. Baltimore Cigarette Service, 193 F.2d 291 (4th Cir. 1951) the court said: " * * * As in the Bogash case, its salesmen sell on the road, or in the office, a product there warehoused, and here processed, in a separate building. * * * " [11] *Taylor* is distinguished, however, in that delivery was made to the ultimate consumer at the plant of all merchandise sold at the office.

Defendants cite the *Bogash* case, supra. *Bogash* involved a cigarette vending machine operation. The company maintained a central office and warehouse for the storage of merchandise, and the safekeeping of machines pending their replacement. The court could not equate this operation with that of chain store systems which combine wholesale as well as retail elements into a single system. There is one feature, however, which distinguishes *Bogash* from the action sub judice. In *Bogash* the warehouse was used only as a storage area and there were no manufacturing or other processing of goods there, as is the case in the kitchen of defendants.

At the trial counsel for defendants submitted to the court two unpublished district court opinions. Green v. Dobbs Houses, Inc. (Western District of Louisiana, Shreveport Division, # Civil Action 11,933, 1967) and Eckerman v. Schetzer (District of Nebraska, Civil 02,544, 1969). The defendant in *Green* operated three restaurants as well as a commissary where certain foods were partially prepared prior to delivery to the restaurant. The commissary was physically connected with one of the restaurants. The court upheld the exemption. It is to be noted that in *Green* the commissary was physically attached to one of the restaurants. It is not shown in the opinion whether the commissary also served as the kitchen of the restaurant to which it was physically attached. The case is distinguishable for the reason that in this action the 101 East Fifth

10. 402 F.2d at 265–266.

11. 233 F.2d at 286.

Street location is not physically connected with or attached to any vending machine lunchroom.

The facts which the court can glean from the decision in *Eckerman* are not sufficient to enable the court to comment thereon.

■ While there are some features of the cases cited by defendants which seemingly support their position, the court is of the opinion that the case sub judice is controlled by the principles enunciated in *Phillips, Armstrong, Keystone Readers Service, Inc., Kip's Big Boy* and *Adair's Cafeterias, Inc.* The kitchen of defendants is physically separated from the vending machine lunchroom areas. The kitchen employees prepare and package food and beverages which are thereafter delivered to other locations for sale to the consuming public by way of vending machines. The consuming public does not have access to the kitchen or to the location at 101 East Fifth Street.

For the reasons hereinbefore stated, the court is of the opinion, and so holds, (1) that the premises situated at the address aforesaid is not a "retail establishment" within the meaning of former Section 13(a) (20) and (2) that the kitchen employees employed at said location are not employees which can be treated by defendants as within that class of employees coming within coverage of the act for the first time by virtue of the 1966 amendments.

This brings us to the relief which should be granted plaintiff. When considering this feature of the case, the court recalls that the evidence shows that shortly after defendant commenced business in March, 1968, defendants were advised of plaintiff's position. When advised of this position defendants did not bring themselves into compliance with the Act. Plaintiff's representatives returned to defendants' place of business in October, 1969 and found defendants still in violation. Defendants were again notified of the position of plaintiffs. Defendants are now in compliance, but, only because the passage of time has erased the preferential treatment afforded employers having employees coming within the coverage of the Act for the first time as the results of the 1966 amendments. It is reasonable to infer that plaintiff brought to the attention of defendants on the first investigation in April, 1968 the Opinion Letter of the Wage-Hour Administration of December 18, 1963, *supra*. The evidence does not show whether or not defendants' refusal to comply with the higher standards of the Act was the result of advice from counsel.

The Fifth Circuit has adopted a strong position on the question of injunctive relief in Wage-Hour cases. An excellent discussion of the problem is contained in the opinion of Circuit Judge J. P. Coleman in Shultz v. Parke, 413 F.2d 1364 (5th Cir. 1969). In speaking of the exercise by the trial judge of the discretion vested in the trial court with regard to issuance of injunctions in Wage-Hour cases, Judge Coleman said:

"We think, therefore, that while in cases of this nature the trial court sits and decides in the exercise of that sound discretion ordinarily attributed to courts of equity the function is nevertheless restricted by the requirement that it must be done 'with an eye to the purposes of the Act.' " [12]

■ Following the admonition of the Fifth Circuit to exercise the discretion vested in the court "with an eye to the purposes of the Act", the court is of the opinion and so finds that plaintiff is entitled to the relief prayed for in the complaint. The amount of restitution has been stipulated and is included in the pre-trial order.

Plaintiff may submit an appropriate order for entry by the court within ten days from the date of the release of this opinion.

12. 413 F.2d at 1368.