[No. 47839-7-I.   Division One.   November 13, 2001.]

ROY STAHL, *Individually and on Behalf of a Class,*
*Appellant,* v. DELICOR OF PUGET SOUND, INC., *Respondent.*

*Roblin J. Williamson* (of *Williamson & Williams*), for appellant.

*Patrick M. Madden* (of *Preston Gates & Ellis, L.L.P.*), for respondent.

ELLINGTON, J. — The Washington Minimum Wage Act generally requires employers to pay overtime compensation to employees who work more than 40 hours per week. One class of employees exempt from the overtime requirement is those who are paid commissions on goods or services. Because the Legislature intended this exemption to apply to salespersons, it does not apply to Roy Stahl, whose job is to drive a delivery truck and stock vending machines. We reverse and remand.

## FACTS

Delicor of Puget Sound, Inc., contracts with companies to place vending machines in their cafeterias, lunchrooms, and snack areas. The vending machines provide food, drinks, and snacks directly to customers. Roy Stahl is a route driver for Delicor. He spends most his time travelling to Delicor machines, filling them with products, collecting the money, filling money changers, cleaning the vending machines and microwaves, and addressing concerns raised by businesses where the machines are located.

Stahl has some discretion in stocking the vending machines.

Until mid-1997, Delicor paid all route drivers by the hour, and paid time-and-a-half overtime compensation. In 1997, Delicor and Teamsters Local No. 599 entered into a new collective bargaining agreement. Under the agreement, all new route drivers were compensated on a commission basis. Drivers hired before January 1, 1997 were permitted to choose between the commission plan and hourly compensation. Stahl chose the commission plan.

In April of 2000, Delicor and Local 599 entered into a new agreement under which Delicor pays all drivers by commission. Stahl was involved in the collective bargaining process.

On May 16, 2000, Stahl filed a complaint alleging that Delicor's commission plan violates the Washington Minimum Wage Act. The complaint also asserted a class claim on behalf of all other route drivers. The trial court granted Delicor's motion for summary judgment. Stahl appeals.[1]

## DISCUSSION

■ The Washington Minimum Wage Act (MWA)[2] is based on the Fair Labor Standards Act of 1938 (FLSA).[3] Generally, the MWA requires employers to pay time-and-a-half overtime compensation for hours worked in excess of 40 hours per week.[4] However, in some cases an employer may pay commissions instead of overtime:

> No employer shall be deemed to have violated subsection (1) of this section by employing any employee of a retail or service establishment for a work week in excess of the applicable work

---

[1] Delicor requests that we strike the statement of facts in the Appellant's opening brief. As we do not rely on Stahl's statement of facts, we need not address the merits of Delicor's request.

[2] Ch. 49.46 RCW.

[3] 29 U.S.C. §§ 201-219.

[4] RCW 49.46.130(1).

week specified in subsection (1) of this section if:

(a) The regular rate of pay of the employee is in excess of one and one-half times the minimum hourly rate required under RCW 49.46.020; and

(b) More than half of the employee's compensation for a representative period, of not less than one month, represents commissions on goods or services.

In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate is to be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.[5]

Delicor can invoke the commissions exemption if it is a retail or service establishment, Stahl's regular rate of pay[6] is more than one-and-a-half times minimum wage, and more than half of that compensation is commissions.

I. Is Delicor a Retail or Service Establishment?

A retail or service establishment is "an establishment seventy-five percent of whose annual dollar volume of sales of goods or services, or both, is not for resale and is recognized as retail sales or services in the particular industry."[7] It is undisputed that 95 percent of Delicor's revenue comes from the direct sale of goods to consumers, so the only question is whether vending machine sales are recognized in the industry as retail sales.

Stahl does not address this question directly. Rather, he cites *Hodgson v. Servomation-Ajax Co.*[8] for the proposition that vending machine companies cannot qualify as retail establishments. The *Servomation* court held that employees who prepared food in a kitchen where no sales were made were not employees of a retail establishment just

---

[5] RCW 49.46.130(3).

[6] The regular rate is the hourly rate actually paid for the nonovertime work week. *See Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 40, 65 S. Ct. 11, 89 L. Ed. 29 (1944).

[7] RCW 49.46.010(7).

[8] 323 F. Supp. 1047 (N.D. Miss. 1971).

because the company made vending machine sales at other locations.[9] Unlike the kitchen employees in *Servomation*, however, Stahl works where vending machine sales do occur. *Servomation* is thus of no help here.

■ ■ We are satisfied that vending machine sales are recognized in the industry as retail sales. The Washington Legislature subjects vending machine sales to the state retail sales tax.[10] Under the FLSA, vending machine sales are retail sales to the ultimate consumer.[11] In short, vending machine sales are recognized as retail sales in that they are end-of-the-line transactions to customers, not wholesale transactions to another business that will resell the goods. Delicor is a retail or service establishment within the meaning of RCW 49.46.130(3).

II. Does Stahl Earn Commissions?

The essence of Stahl's argument is that he was not paid commissions within the meaning of the statute, so Delicor may not invoke the commissions exemption to avoid paying overtime compensation.[12] Neither the MWA nor Department of Labor and Industries (DLI) regulations defines "commissions" as used in RCW 49.46.130(3), and no Washington court has addressed this issue.

■ ■ Stahl argues RCW 49.46.130(3) is ambiguous. A statute is ambiguous when, either on its face or as applied to particular facts, it is fairly susceptible to different, reasonable interpretations.[13] Where the language is ambiguous, we resort to the tools of statutory construction in

---

[9] *Servomation*, 323 F. Supp. at 1056.

[10] *See, e.g.,* RCW 82.08.050 ("On all retail sales through vending machines, the tax need not be stated separately[.]").

[11] *See Walling v. Sanders*, 136 F.2d 78, 81 (6th Cir. 1943) ("The machine is the mechanical arm of the operator who sells directly to the customer. Such sales may not otherwise be considered than as retail sales."). *See also Wirtz v. Pickett Food Serv.*, 304 F. Supp. 784, 788 (D.N.M. 1968) (cafeteria and food vending machine services are retail in nature).

[12] Stahl also argues that the commission rate is not "bona fide" as required by RCW 49.46.130(3). In light of our decision, we do not address this issue.

[13] *See Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 808, 16 P.3d 583 (2001); *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 666, 15 P.3d 115

order to ascertain and give effect to legislative intent.[14] Where the meaning of a statute is clear, courts accept and enforce its plain and unambiguous language.[15]

Of the five courts to examine the issue, four—the Seventh Circuit, the Eleventh Circuit, the California Court of Appeals, and the Kansas Court of Appeals—have found the word "commissions" in this context sufficiently ambiguous to resort to statutory construction and/or legislative history to determine legislative intent.[16] For example, in *Mechmet v. Four Seasons Hotels, Ltd.*,[17] the Seventh Circuit held "the meaning of the word 'commissions' . . . is not clear," and turned to an examination of the legislative history of the FLSA.

We agree that the word "commissions" as used in the statute is fairly susceptible to different interpretations. Delicor contends the statute applies to all employees of retail or service establishments. Stahl argues that to earn commissions, an employee must principally be engaged in sales. Both interpretations are reasonable. We must therefore ascertain legislative intent.

Delicor contends that an analysis of the history of RCW 49.46.130 demonstrates the Legislature did not limit the exemption in subsection three to salespersons. Delicor points to subsection four of the statute, which provides an exemption for "commissioned salespeople primarily engaged in the business of selling automobiles, trucks, recreational vessels, recreational vessel trailers, recreational vehicle trailers, recreational campers, manufactured hous-

---

(2000); *Grange Ins. Ass'n v. MacKenzie*, 103 Wn.2d 708, 712, 694 P.2d 1087 (1985).

[14] *Health Ins. Pool v. Health Care Auth.*, 129 Wn.2d 504, 508, 919 P.2d 62 (1996); *State v. Sullivan*, 143 Wn.2d 162, 174-75, 19 P.3d 1012 (2001).

[15] *Sullivan*, 143 Wn.2d at 175.

[16] *See Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1175 (7th Cir. 1987); *Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1254-56 (11th Cir. 2001); *Keyes Motors, Inc. v. Div. of Labor Standards Enforcement*, 197 Cal. App. 3d 557, 562-63, 242 Cal. Rptr. 873, 875 (1987); *Salon Enters., Inc. v. Langford*, 31 P.3d 290, 295 (Kan. Ct. App. 2000); *but see Roto-Rooter Servs. Co. v. Dep't of Labor*, 219 Conn. 520, 593 A.2d 1386, 1389 n.6 (1991).

[17] 825 F.2d 1173, 1175 (7th Cir. 1987).

ing, or farm implements to ultimate purchasers."[18] Because this section was present when the Legislature added RCW 49.46.130(3) in 1997, Delicor argues that the Legislature did not intend subsection three to apply only to salespeople. But subsection four applies only to employees selling certain types of "big ticket" goods. The fact subsection four preexisted subsection three does not answer whether subsection three was intended to apply to all employees, or to all salespeople.

■■ In ascertaining legislative intent, we look also to the legislative history, and consider the extrinsic evidence of legislative intent in context.[19] RCW 49.46.130(3) was enacted to correct a perceived oversight in the MWA. Until 1992, Washington retail and service establishments considered their retail salespersons exempt from overtime requirements under RCW 49.46.130(2)(h),[20] which was thought to incorporate the overtime compensation exemption for salespeople found in 29 U.S.C. § 207(i).[21] However, in 1992, DLI issued an interpretation stating that RCW 49.46.130(2)(h) did not incorporate the federal exemption.[22] The Legislature therefore amended RCW 49.46.130, adding as section 130(3) the language of 29 U.S.C. § 207(i).[23] The official title of the Senate bill was "AN ACT Relating to overtime compensation for *commissioned salespersons.*"[24]

■ The legislative history shows the bill was narrowly designed to apply to salespersons. For example, before the bill passed in the House of Representatives, the Speaker ruled that a proposed amendment to remove farm workers

---

[18] RCW 49.46.130(4).

[19] *See, e.g., Health Care Auth.,* 129 Wn.2d at 508-09.

[20] RCW 49.46.130(2)(h) provides in relevant part: "[T]he provisions of the federal law regarding overtime payment based on a work week other than forty hours shall nevertheless apply to employees covered by this section[.]"

[21] *See* SENATE JOURNAL, 55th Leg., Reg. Sess. 619 (Wash. 1997) (remarks by Sen. Schow); H.B. REP. SSB 5569, 55th Leg., Reg. Sess. (Wash. 1997).

[22] *Id.*

[23] *Id.* Section 207(i) is virtually identical to RCW 49.46.130(3).

[24] S.S.B. 5569, 55th Leg., Reg. Sess. (Wash. 1997) (emphasis added).

from a different overtime exemption found elsewhere in the MWA, was outside the scope of the title:

The subject portion of the title of Substitute Senate Bill No. 5569 is: "ACT Relating to overtime compensation for commissioned salespersons."

*The Scope of the bill, as measured by the title of the act, is narrow; any amendment must in some manner deal with overtime compensation for commissioned sales persons,* in order to fall within the scope of this title.

Amendment 591 by Representative Conway proposes to remove farm workers from an exemption from overtime contained in the current law.

While amendment 591 seeks to amend the same section of RCW as does Substitute Senate Bill No. 569 [sic], the amendment does not relate to overtime compensation for commissioned salespersons.[25]

Further, in adding subsection three, the Legislature expressly stated its intent:

Section 3, chapter 289, Laws of 1975 1st ex. sess., codified as RCW 49.46.130, was adopted for the purpose of creating conformity between state overtime pay standards and the federal fair labor standards act. RCW 49.46.130(2)(h) was intended to incorporate alternative federal premium guarantee standards for *retail commissioned salespersons,* found at 29 U.S.C. 207(i), into the state wage and hour law.

The legislature finds that *retail sales* typically peak during holiday seasons and events such as product promotions and new product arrivals. *Retail commissioned salespersons* can maximize their incomes, and are therefore most benefited, by maximizing the hours they work during periods when the *sales* per hour ratio is high. Employment policies that penalize employers for working *retail commissioned salespersons* more than forty hours in a peak *sales* work week are detrimental to

---

[25] HOUSE JOURNAL, 55th Leg., Reg. Sess. and House 1st Spec. Sess., 2874-75 (Wash. 1997) (emphasis added). Stahl does not argue that under Delicor's interpretation of RCW 49.46.130(3), the statute would violate the single-subject clause of the Washington Constitution.

the well-being of Washington's *retail commissioned salespersons.*[26]

This statement of intent is reflected in the Senate, House, and Final Bill Reports. According to the Senate and Final Bill Reports, the Legislature adopted subsection three with the understanding that the federal exemption covered "retail commissioned salespeople."[27] Likewise, the House Bill Report states that "alternative federal premium guarantee standards for retail commissioned salespersons were intended to be incorporated into the Minimum Wage Act."[28] Thus, the express intent of the Legislature in amending RCW 49.46.130 was to incorporate the federal exemption, which the Legislature believed applied to salespersons.

Delicor contends that the Legislature's intent not to limit the statute to persons engaged in sales activities is shown by its rejection of an amendment providing just such a limitation. But Delicor misreads the rejected amendment. The following amendment was proposed and rejected in both the House and Senate:

> This subsection (3) shall only apply to the hours of employment in excess of the applicable work week specified in subsection (1) of this section where, except for de minimis other duties done at the direction of the employer, the employee is engaged exclusively in sales duties.
>
> . . . .
>
> (8) "Sales duties" means selling goods or services, duties incidental to or in conjunction with selling, inactivity pending a sales opportunity, or duties performed pending a sales

---

[26] Laws of 1997, ch. 203, § 1 (emphasis added). Governor Locke vetoed this section of the bill on the grounds it was "an attempt to interpret the legislative intent of the state wage and hour law, passed in 1975, and to thereby influence pending litigation." Governor's explanation of partial veto, Laws of 1997, at 998. The vetoed section nevertheless serves to show the Legislature's intent in passing the 1997 act.

[27] S.B. Rep., SSB 5569, 55th Leg., Reg. Sess. (Wash. 1997); Final Bill Rep., SSB 5569, 55th Leg., Reg. Sess. (Wash. 1997).

[28] H.B. Rep., SSB 5569, 55th Leg., Reg. Sess. (Wash. 1997).

opportunity in reasonable proximity to the employee's customary sales location.[29]

Contrary to Delicor's contention, the rejected amendment did not attempt to limit the application of the statute to salespersons. Rather, the amendment attempted to limit the *overtime duties* of exempt employees to sales-related activities. The premise of the amendment appears to have been that employees covered by the statute were salespeople, who should be paid time-and-a-half if they were required to work overtime to perform non-sales-related duties. Rejection of the amendment does not indicate the Legislature intended the exemption to apply to persons whose duties were not generally sales-related activities. The legislative history thus demonstrates legislative intent to create an exemption from overtime only where an employee is involved principally in selling a product or service.

This construction is consistent with one of the main purposes of overtime wage laws—to prevent workers from working abnormally long hours and thereby taking jobs from workers who prefer more normal hours,[30] and also fits the ordinary understanding of the meaning of commissions—that a commissioned employee is one who generates sales for the employer.[31] Further, both the FLSA and the MWA are remedial statutes, exemptions from which are to be construed strictly in favor of employees so as not to defeat the broad objectives of the acts.[32] An

---

[29] SENATE JOURNAL, 55th Leg., Reg. Sess. 618 (Wash. 1997). The House rejected the same amendment. HOUSE JOURNAL, 55th Leg., Reg. Sess. and 1st Spec. Sess. 2875 (Wash. 1997).

[30] *See generally* Garrett Reid Krueger, Note & Comment, *Straight-Time Overtime and Salary Basis: Reform of the Fair Labor Standards Act*, 70 WASH. L. REV. 1097, 1097 (1995); *Mechmet*, 825 F.2d at 1175-76 (citing H.R. REP. No. 75-1452, at 8-9 (1937); S. REP. No. 75-884, at 2-5 (1937)).

[31] *See, e.g.*, MICHAEL J. KILLEEN, EMPLOYMENT IN WASHINGTON: A GUIDE TO EMPLOYMENT LAWS, REGULATIONS, AND PRACTICES § 4.3(b), at 4-11 (4th ed. 1998) (FLSA § 207(i) and RCW 49.46.130(3) "commission" overtime exemptions apply to "commission salespersons.").

[32] *See Tift v. Prof'l Nursing Servs., Inc.*, 76 Wn. App. 577, 582, 886 P.2d 1158 (1995) (superseded by RCW 49.46.130(2)(a)); *Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1254 (11th Cir. 2001); *see also Birdwell v. City of Gadsden*, 970 F.2d 802, 805 (11th Cir. 1992).

employer bears a heavy burden of proving its employees " 'fit plainly and unmistakably' " within an exemption,[33] and a narrow construction of exemptions to the MWA is "consistent with Washington's long and proud history of being a pioneer in the protection of employee rights."[34]

Two federal courts have examined this issue. Because the MWA is based upon the FLSA, federal authority often provides helpful guidance, although federal FLSA authority does not bind Washington courts.[35] Here, the federal cases are not helpful.

The leading federal case is *Mechmet v. Four Seasons Hotels, Ltd.*[36] There, the Seventh Circuit considered whether banquet waiters earned commissions so as to be exempt from overtime compensation under 29 U.S.C. § 207(i).[37] The court noted that although sales commissions are the most common form of commissions, other types of compensation representing a percentage of the value of goods or services could be considered commissions. The court found the word "commissions" ambiguous, and recognized that a simple dictionary definition could result in unintended exemptions. The court therefore carefully examined the purposes of the FLSA before recognizing an expansion of the usual categories of commission earners,[38] and holding the waiters fell under § 207(i) overtime exemption.

The court noted that one purpose of the FLSA was to protect workers from impairing their health or incurring accidents from tiredness. The court found that this purpose did not apply to banquet workers because they worked

---

[33] *See Tift*, 76 Wn. App. at 582 (quoting *Goff v. City of Airway Heights*, 46 Wn. App. 163, 166, 730 P.2d 691 (1986)).

[34] *See Drinkwitz v. Alliant Techsystems, Inc.*, 140 Wn.2d 291, 300, 996 P.2d 582 (2000).

[35] *Drinkwitz*, 140 Wn.2d at 298; *Chelan County Deputy Sheriffs' Ass'n v. Chelan County*, 109 Wn.2d 282, 291 n.3, 745 P.2d 1 (1987).

[36] 825 F.2d 1173 (7th Cir. 1987).

[37] *Mechmet*, 825 F.2d at 1178.

[38] *Mechmet*, 825 F.2d at 1175-77.

nonhazardous jobs where accidents due to tiredness were not a large concern.[39] The court also noted that another purpose of the FLSA was to prevent those willing to work abnormally long hours from taking jobs from those who prefer shorter hours, and found that banquet workers did not take jobs away from people preferring to work fewer hours, because banquets are "big ticket" items subject to "feast or famine" periods of employment and "irregular hours."[40]

The only other federal case on this issue is *Klinedinst v. Swift Investments, Inc.*[41] In *Klinedinst*, a divided panel of the Eleventh Circuit held that employees performing service work in an automobile garage earned commissions under 29 U.S.C. § 207(i). The majority noted that the purpose of commissions is to encourage speed and efficiency, and relied on 29 C.F.R. § 779.413(b), which states:

> Although typically in retail or service establishments commission payments are keyed to sales, the requirement of the exemption is that more than half the employee's compensation represent commissions "on goods or services," which would include all types of commissions customarily based on the goods or services which the establishment sells, and not exclusively those measured by "sales" of these goods or services.

The majority also relied on a Department of Labor Field Operations Handbook and several dictionary definitions of the word "commission."[42]

The dissent vigorously disagreed:

> By any ordinary understanding of the meaning of commissions, the payments to Klinedinst are not commissions. Klinedinst does not generate sales or jobs for his employer. Rather, he is an

---

[39] *Mechmet*, 825 F.2d at 1176.

[40] *Mechmet*, 825 F.2d at 1176.

[41] 260 F.3d 1251 (11th Cir. 2001).

[42] *Klinedinst*, 260 F.3d at 1255.

ordinary wage-earning employee performing service work in an automobile garage.[43]

The dissent examined the purposes of the FLSA, and noted that, unlike the banquet workers in *Mechmet* who worked nonhazardous jobs, Klinedinst worked in automobile repair, where accidents due to tiredness can be a great concern.[44] In addition, the dissent distinguished the daily work of automobile repair from the uneven schedule and "big ticket" nature of banquets.[45] Pointing to inconsistent Department of Labor interpretations of the commissions exemption—an opinion letter taking a narrow view of what constitutes a § 207(i) commission, starkly contrasted with the expansive view reflected in the Field Operations Handbook—the dissent gave the Labor Department's judgment little weight ("[t]he Labor Department appears somewhat at sea on the issue of commissions").[46]

By contrast, Washington has no analogous state regulations or handbook. In addition, *Mechmet* and *Klinedinst* are factually dissimilar from the case before us. Stahl's work does not involve "large ticket items," nor is Stahl subject to "feast or famine" periods of employment. Accidents due to tiredness are certainly a concern for delivery drivers, and encouraging speed for truck drivers is a dubious objective. There is no evidence Stahl's efficiency has increased on the commission plan.

Further, unlike the Washington Legislature, Congress has not clearly indicated its intent in enacting § 207(i). In light of clear indications the Washington Legislature intended RCW 49.46.130(3) to cover retail commissioned salespersons, neither *Mechmet* nor *Klinedinst* provides insight into the meaning of the word "commissions" as used in the Washington exemption.

---

[43] *Klinedinst*, 260 F.3d at 1258 (Restani, J., dissenting).

[44] *Klinedinst*, 260 F.3d at 1258-59 (Restani, J., dissenting).

[45] *Klinedinst*, 260 F.3d at 1259 (Restani, J., dissenting).

[46] *Klinedinst*, 260 F.3d at 1259 (Restani, J., dissenting) (citing Department of Labor opinion letter stating dancers who are compensated principally by a mandatory $5.00 charge per dance are not compensated by commission).

In addition, Delicor's interpretation leads to results at odds with the legislative objective. For example, under Delicor's interpretation, a retail employer could avoid paying overtime compensation to its cashiers by linking their income to till receipts. As long as half a cashier's income was calculated as a percentage of till receipts, and the cashier made a total income greater than one-and-a-half times minimum wage for all the hours worked, the employer could require the cashier to work as many hours as it chose without having to pay overtime compensation. This result is inconsistent with the express legislative intent, with "the Legislature's concern for the health and welfare of Washington's workforce," and with "Washington's long and proud history" of protection of employee rights.[47]

■ We hold that to earn a commission within the meaning of RCW 49.46.130(3), an employee must be involved principally in selling a product or service.

■ Stahl is not involved principally in selling a product or service. While it is undisputed that Stahl has some discretion in stocking the vending machines on his routes, it is also undisputed that he spends virtually all his time travelling to Delicor machines, filling them, collecting money, filling money changers, cleaning the vending machines and microwaves, and addressing the concerns raised by businesses where the machines are located. These are not the activities of a salesperson, and Stahl's discretion in filling vending machines is not like the sales pitch of a shoe or clothing salesperson, or like the activities of the Delicor salesperson who initially places machines in each location.

Stahl is a delivery driver who stocks vending machines; his job does not involve selling a product or service. Delicor has not carried the heavy burden of proving Stahl fits plainly and unmistakably within the exemption. We hold that Stahl does not earn commissions under RCW 49.46.130(3), and therefore Delicor is not exempt from paying him overtime compensation.

[47] *Drinkwitz*, 140 Wn.2d at 300.

We reverse the order granting Delicor's motion for summary judgment and remand for further proceedings consistent with this opinion.

AGID, C.J., and KENNEDY, J., concur.

Review granted at 147 Wn.2d 1001 (2002).